ELMER A. AUGENSTEIN *vs.* INSURANCE COMPANY OF NORTH AMERICA.

Suffolk.    December 7, 1976. — February 17, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Insurance,* Theft insurance: reference, amount of loss.   *Arbitration.*

In an action on a homeowners insurance policy for damages sustained as a result of the theft of jewelry from the plaintiff's home, a finding by referees under a reference clause of the policy that such a loss was sustained was conclusive and the insurer was not entitled to a fresh determination by a jury of the question of loss. [36-37]

CONTRACT.   Writ in the Superior Court dated March 19, 1970.

The action was tried before *Robert Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review.

*George J. Sanker, Jr.,* for the plaintiff.

*Charles R. Desmarais* for the defendant.

KAPLAN, J.   As the insured under a "homeowners policy" issued by the defendant Insurance Company of North America covering, among other casualties, the theft or mysterious disappearance of personal property owned by the insured and situated on described premises, the plaintiff Elmer A. Augenstein claimed $50,000 (the limit of liability) for a theft of jewelry from his residence in West Barnstable alleged to have occurred on November 29, 1967.

After some investigation, the insurer on January 29, 1968, advised the plaintiff's counsel, in returning to him a submitted proof of loss, that "we are not yet satisfied that a loss has taken place." This was followed on June 20, 1968, by a letter in which the insurer "declines any coverage[1] under the policy ... and informs you that no voluntary payment will be made."

The plaintiff thereupon invoked the "reference" clause of the insurance policy (set out and discussed below).[2] On February 9, 1970, a majority of the referees, after hearing, "upon all the evidence before us ... find that the ... insured did sustain a loss under his policy and that the amount of his loss was ... [$50,000]."

As the insurer still refused payment, the plaintiff on March 19, 1970, commenced an action on the policy in the Superior Court claiming the $50,000, and was met by an

---

[1] Compare this usage of "coverage" with that developed below in this opinion.

[2] Note that under the clause the reference is made a "condition precedent" to action on the policy. See *Employers' Liab. Assurance Corp.* v. *Traynor,* 354 Mass. 763 (1968).

allegation in the answer that he had sustained no loss.[3] Taking the position that the referees' award was presumptively conclusive as to loss and amount under the policy, the plaintiff moved under G. L. c. 231, § 59, for "judgment on undisputed facts."[4] The motion was denied. Trial of the action to a jury took place in February, 1971. Again the plaintiff went on the theory that the referees' award was virtually determinative of the action; his case in chief consisted, in substance, of introducing in evidence the referees' award. In the insurer's view, on the other hand, although the award could fix the amount of the loss, if there was any, the question whether there had been a loss (or only a sham) remained for trial; and on this the plaintiff would have the burden of proof. The defendant, however, did not rest on the plaintiff's case but proceeded to attack the proposition that a loss had been sustained, and in that connection called the plaintiff as a witness (cf. Mass. R. Civ. P. 43 [b], 365 Mass. 806 [1974]) and interrogated him at some length. There was cross-examination of the plaintiff by his own counsel, and both sides introduced additional evidence.

It will be enough to say that a jury could believe or disbelieve the testimony of the plaintiff, judging it to be either an honest if diffuse account of the behavior of an eccentric, or the fabricated tale of a determined miscreant. The plaintiff, a dealer in antiques, testified that after November 7, 1967, he had carried about with him in a bag a very large amount of jewelry, and that on the morning of November 29, he left the bag without guard in the West Barnstable house, and returned around 5 P.M. that day to find it stolen; all this against the background of the plaintiff's having for some years used several names and maintained a rather bewildering number of safe deposit boxes. The jury, under a charge casting the burden on the plain-

---

[3] The answer did not attempt to put forward any defense of fraud.

[4] This was a predecessor of the present motion for summary judgment under our Rules of Civil Procedure. Section 59 was confined in operation to the District Courts by St. 1973, c. 1114, §§ 173, 351.

tiff to prove loss by theft by a preponderance of the evidence, brought in a verdict for the insurer. There was testimony in the course of trial that much the same evidence had been put before the referees at the four-day hearing before them.[5]

At the close of the evidence before the jury, the plaintiff had moved unsuccessfully for a directed verdict, which was understood to frame the question of the effect that was to be ascribed to the referees' award,[6] and that is the essential question now before us on appeal from the judgment for the defendant insurer entered on the jury's verdict. Also appealed from is the trial judge's denial on March 12, 1975, of a motion for a new trial.[7] The basis for the motion was new evidence, tending, as the plaintiff argued, to confirm his testimony at trial: a medallion, one of the items claimed to have been stolen, valued at about $1,000, had turned up at an auction sale in Dennis in August, 1972, and had been taken into the possession of the police and turned over to the plaintiff as his property.[8]

---

[5] It appeared, incidentally, that the insurer expected from the outset that this question whether there had been any loss under the policy would be tried before the referees. Submitted on the motion for judgment on undisputed facts was a letter from counsel for the insurer to the Commissioner of Insurance dated September 17, 1969, evidently concerning the appointment of a third referee under the procedure of G. L. c. 175, § 100. The letter stated in part:

"[T]here are several issues involved, specifically whether a loss did occur under the terms of the policy and, if so, the extent, which would necessarily involve the value of the pieces of jewelry.

"I expect that the matter will take a considerable time to try, namely several days . . . ."

[6] It was not disputed at trial that, if the plaintiff was entitled to recover, the recovery should be in the principal amount of $50,000.

[7] There was egregious delay in the disposition of this action, occasioned in part by difficulty with a bill of exceptions. This resulted in an application to establish the truth of the exceptions. Ultimately it was agreed to use the transcript in lieu of exceptions; and to complete the case for purposes of review, the motion for a new trial, made on July 9, 1973, was brought on for hearing, and was denied on March 12, 1975. Lodged in the Appeals Court, the case was brought here on our own motion.

[8] We need not consider any right of the insurer, following our disposition of this appeal, with respect to such a recovery by the insured.

We need not consider the question of the new trial because we hold that the plaintiff's motion for a directed verdict should have been allowed on the basis of the referees' award.

The policy contained the standard "reference" clause required by G. L. c. 175, § 99, Twelfth, as appearing in St. 1951, c. 478, § 1, as follows: "In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months."

Both parties conjure with two cases dealing with this clause. In *F. & M. Skirt Co.* v. *Rhode Island Ins. Co.*, 316 Mass. 314 (1944), an action on a fire policy, a majority of the referees had found on all the evidence before them that the plaintiff insured had sustained no loss as a result of the fire, and they therefore awarded "no sum" to the insured. *Id.* at 315. The insured contended (as does the insurer here) that "the amount of loss and not the fact of loss was the sole matter for determination by the referees" and that an award that assumed to determine "the fact of loss" was beyond the referees' authority. *Ibid.* The court held the award to be conclusive. The introductory phrase of the reference clause, "[i]n case of loss under this policy," did not mean that an insurer by joining in a reference should be taken to concede that there was a loss; the context indicated that the meaning was: in case of *claimed* loss. The clause had the effect of submitting to binding reference the "amount of the loss" as distinguished from the

insurer's ultimate "liability" (*id.* at 317) [9] (the latter point, it may be added, is emphasized by G. L. c. 175, § 101E, set out in the margin[10]). The right to determine the amount of the loss carried with it the right to decide that none existed. In a cryptic aside, however, this court said that the referees "would not have the right . . . to determine whether a loss, if sustained, was covered by the policy or whether the policy had ever taken effect; in other words, to decide questions pertaining to liability." *Id.* at 316.

The quoted remark about sustained loss was of doubtful meaning. *Fox* v. *Employers' Fire Ins. Co.,* 330 Mass. 283 (1953), clarifies this matter and, more generally, speaks to the relation between "loss" or "amount of loss" and "coverage" under the policy. In *Fox* the policies were for "direct loss or damage . . . caused by lightning," with express exclusion of "loss . . . caused by . . . windstorm." In their award, the referees said they "determined the amount

[9] This recalls the historic boundary of questions that could by the terms of the policy be made irrevocably subject to binding determination by referees or appraisers. An undertaking in the policy to go further and submit "liability" to extrajudicial determination would have been held revocable before award as ousting the courts of jurisdiction (a phase of the older restrictive attitude toward agreements to arbitrate). See *Palmer* v. *Clark,* 106 Mass. 373 (1871); *Hanley* v. *Aetna Ins. Co.,* 215 Mass. 425 (1913); *Second Soc'y of Universalists* v. *Royal Ins. Co.,* 221 Mass. 518 (1915). General Laws c. 175, § 101E (see n.10 below), expressly permits extension of the reference to the question of liability if the parties choose to agree formally to that effect.

[10] Section 101E reads: "A company which in compliance with section one hundred or one hundred and one D joins in reference proceedings shall not thereby be held to have waived any legal defense to the claim in respect to which the reference proceedings are held and such proceedings shall fix only the amount of the loss sustained by the insured or the sound value of the property, as the case may be, unless both parties shall agree in writing that the reference shall be held and shall proceed under the provisions of chapter two hundred and fifty-one [Uniform Arbitration Act for Commercial Disputes]."

An instance of an issue going to "liability" (a legal defense under G. L. c. 175, § 101E) is whether the insured overvalued the loss in his proof of loss, thus falling under a provision of the policy voiding it for certain frauds. *Harold J. Warren, Inc.* v. *Federal Mut. Ins. Co.,* 386 F.2d 579 (1st Cir. 1967). Cf. *Goldberg* v. *Lynn Mfrs. & Merchants Mut. Fire Ins. Co.,* 276 Mass. 213 (1931); *Urbaniak* v. *Firemen's Ins. Co.,* 227 Mass. 132 (1917).

of loss ... under said policies to be $317 ...." *Id.* at 285-286. The plaintiff insured later sued on the policies claiming a much larger amount. His contention was that the referees had exceeded their authority when they discriminated between loss by lightning and loss by windstorm and confined their award to the amount of the former as they found it. In the insured's view, that was a matter of coverage going to liability which must be left to the courts: the referees should presumably have found the total loss occasioned by the natural event and any division must in the end be left to decision by the court in an action on the policies.

This court rejected the insured's approach which would lead to a repetitious or fragmented procedure out of keeping with the pragmatic purpose of the reference clause.[11] Cf. *Employers' Fire Ins. Co.* v. *Garney,* 348 Mass. 627, 631-632 (1965). We said it was the referees' duty to decide the amount of loss "under the policy," not the amount of loss "whether covered by the policy or not." *Fox, supra* at 287. Where there was no question about the "construction" (*id.* at 289) of the policy, it would follow that the referees' finding would be conclusive of the loss as well as the amount; that was the situation in the *Fox* case, as there was no contention that the referees had construed improperly the critical words "lightning" and "windstorm." Nor had there been any apparent misconstruction in the *F. & M. Skirt Co.* case. Explaining the passage in the latter decision in which the cryptic statement appeared, this court said in *Fox*: "It is obvious that in the quoted language this court was referring to ultimate liability and was not undertaking to speak with regard to the precise question now before us. It is one thing to impeach an award for error of law and quite another to assert that

---

[11] "The summary determination of the amount of loss intended by the statute would be utterly defeated and confusion provided in its stead." *Fox,* 330 Mass. at 287. The view rejected in *Fox* appears to be accepted in *Munn* v. *National Fire Ins. Co.,* 237 Miss. 641 (1959), over a dissent which cites and relies on our *F. & M. Skirt Co.* and *Fox* decisions.

referees exceeded their authority in confining their award to the loss or damage covered by the policy. We do not understand that it is contended that the referees in the case at bar were in error in their construction of the policies." *Id.* at 289. But suppose a case where there was a question of construction — and thus a problem of coverage going to ultimate liability. The *Fox* case indicated that the referees were still to find the amount of loss in light of their own interpretation of the terms of the policy, but the question of construction would remain open for reexamination in an action on the policy, if one should eventuate.[12] This court relied on cases illustrative of the principle: *Itasca Paper Co.* v. *Niagara Fire Ins. Co.*, 175 Minn. 73, 79 (1928);[13] *Harrington* v. *Agricultural Ins. Co.*, 179 Minn. 510, 512 (1930); *Ciresi* v. *Globe & Rutgers Fire Ins. Co.*, 187 Minn. 145, 148 (1932). See *Jefferson Ins. Co.* v. *Superior Court of Alameda County*, 3 Cal. 3d 398 (1970).[14]

In the present case we have an award presumptively valid and dispositive. See *Lakewood Mfg. Co.* v. *Home Ins. Co.*, 422 F.2d 796, 798 (6th Cir. 1970). The insurer did not contend below, nor does it suggest here, that the referees misconceived the meaning of "theft" and thus were mistaken as to coverage,[15] nor did it seek to impeach

---

[12] "In order intelligently to determine the amount of loss or damage under a given policy, as an incidental step in their deliberations, the referees must reach their own conclusions as to what they think that loss or damage is. Such conclusions must necessarily be affected by what they think the coverage is. Their views so far as ultimate liability goes are wholly tentative and in no sense a decision on that underlying question." *Fox,* 330 Mass. at 287-288.

[13] In the *Itasca* case, the board of appraisers had adopted a certain interpretation or definition of "pulpwood," the subject of the fire policy, in determining the amount of loss. In the later action on the policy, it was open to the insurance company to contend that that interpretation or definition was wrong — a question of coverage.

[14] The result in the *Fox* case was that the defendant insurer's exceptions were sustained to a judgment for the insured based on the jury's finding of a $3,825 loss.

[15] A matter that could be proved by extrinsic evidence if need be. See *Jefferson Ins. Co.* v. *Superior Court of Alameda County,* 3 Cal. 3d at 403; cf. *Fox,* 330 Mass. at 286-287.

the award for bias of the referees, their refusal to hear relevant proffered evidence (see *Gervant* v. *New England Fire Ins. Co.*, 306 N.Y. 393 [1954]), or any other illegality or mistake of law. Under our decisions the insurer was not entitled to a fresh determination by a jury of the question of loss.

> *Exceptions sustained; judgment for the plaintiff in the amount claimed.*