Welch, J.
The plaintiffs filed a motion for Summary Judgment. After hearing argument and reviewing the extensive submissions, the plaintiffs’ motion must be allowed.
There is no dispute that a fire occurred at the Pine Brook Estates Condominium. It is also undisputed that the defendants insured the condominium for fire loss. The defendant insurer, however, consistently insisted that Pine Brook’s claim of loss (i.e. the amount of loss) was fraudulently over inflated. The insurer paid monies under the policy for fire losses in various of the units but balked at further payment of an additional claim of loss for Unit No. 106 owned by Phillip Strasnick.
There is no dispute that Unit 106 received some damage from the fire. There is no dispute that the policy insured Unit 106 against fire loss. The defendant insurer, however, took exception to Philip Strasnick’s complete gutting of his particular unit, arguing that it was unnecessary. Strasnick was the President of the Board of Trustees of this condominium complex. The insurer insisted that Strasnick’s unit did not need to be completely gutted and insisted that Strasnick acted fraudulently in submitting inflated claims of loss as to Unit 106. Defendant insurer denied the entire additional claim based on the assertion that Strasnick had concealed or misrepresented material facts and had committed fraud.
Pursuant to G.L.c. 175, §99, the insurance policy contained a reference provision. The standard provision read in part: “In case of loss under this policy and the failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men . . .” The defendants consistently resisted any reference proceeding, claiming that Strasnick’s actions were fraudulent and/or uncooperative and, thus, the Association was not entitled to coverage. The insurer filed a declaratory judgment action to establish its position that no coverage existed. The action was dismissed for failure to proceed with the reference procedure as a perquisite. The insurer did not appeal this ruling.
Thereafter, reference was made. In various submissions relating to the reference, the insurer continually insisted that it was reserving all issues regarding to ultimate liability under the policy. For example, in the insurer’s memorandum for reference, the insurer “expressly reserved all of its rights and defenses under the policy of insurance or at law.” The insured also took the position that it already had paid the proper amount on the initial fire loss claim and this disputed “expanded” claim did not deserve any additional monies. The insurer insisted that the reference should award no money because the gutting of Unit 106 was unnecessary and that certain submissions of expenses by the plaintiff were not related to the fire loss. During the reference procedure, the insurer vigorously argued (and presented evidence) that Mr. Strasnick was not credible and that he had proceeded fraudulently with the complete gutting of his unit and had submitted over inflated claims of loss. On February 6, 2001, the referrees, after viewing the premises and reviewing the evidence and hearing testimony ruled: “Upon all evidence presented and in accordance with the provisions [of the particular policy] ... we hereby make the following award: Award $68,000.00.” The amount awarded was less than the plaintiffs sought and more than the insurer thought was appropriate.
This is not a case where the insurer is claiming that the particular type of loss did not come within the confines of its policy. Nor is this the case the policy terms are in some way ambiguous. Instead, the insurer simply disagrees with the extent of the loss at issue, i.e. the total monetary amount of the loss. See, e.g., Defendant’s Memorandum of Law in Opposition to Motion for Summary Judgment p.2 (“A controversy arose as to the damages claimed by way of the subject fire to Unit 106”). To be sure, the insurer claims that Strasnick, and the condominium association, have forfeited any rights under the insurance policy by submitting over inflated and, thus, fraudulent loss estimates. At heart, however, this is simply a dispute about the amount of loss. Almost anytime that an insured submits a claim of property loss significantly greater than the insurer believes appropriate, claims of fraud, falsity, or lack of cooperation may arise. But these are issues, particularly in this case, that were fully explored and decided during the reference procedure. Indeed, during the reference procedure, the insurance company introduced extensive evidence re *567 garding fraud by Strasnick in an attempt to impeach Strasnick and to defeat or diminish his claim. The referees apparently credited much of the insurance company’s evidence and reduced the amount of loss for Unit 106 significantly from the plaintiffs’ claim of loss.
In the circumstances presented by this case, the Supreme Judicial Court’s decision of Augenstein v. Insurance Company of North America, 372 Mass. 30 (1977), appears controlling. In Augenstein, the insurer took essentially the same position as the defendant is taking in this case, namely that the reference procedure “could fix the amount of loss, if there was any, but the question whether there had been a loss (or only a sham) remains for trial.” Id. at 32. The Augenstein court rejected this argument and stated that the insurer’s position “would lead to a repetitious or fragmented procedure out of keeping with the pragmatic purpose of the reference clause.” Id. at 36. Instead, the court adopted the approach that it was the referees’ duty to “decide the amount of loss ‘under the policy,’ not the amount of loss ‘whether covered by the policy or not.’ ” Id. at 36. Quoting Fox v. Employers Fire Insurance Co., 330 Mass. 283, 287 (1953). Thus, the referees’ award was “presumptively valid and dispositive.” The insurer was not allowed to relitigate at trial the contention that there was no loss under the policy in that the insured had faked the alleged theft.
Admittedly, the Augenstein holding walks a fine line. By participating in the reference procedure, the insurer does not waive any legal defenses to the claim. G.L.c. 175, §101E. For example, issues of construction of policy terms cannot (without written consent of both parties) be definitively decided by the referees. Instead, such issues would “remain open for re-examination” in the court action. Augenstein, supra at 37. But here, as in the Augenstein case, the defendant does not argue that the referees misconceived the meaning of some term of the insurance policy, nor does the defendant seek to impeach the award by alleging bias by the referees or their refusal to hear relevant evidence. Instead, the insurer wishes the juiy now to determine that question of loss; namely, the insurer wishes to prove that this loss was a sham. This is the same position taken during the reference procedure and Augenstein prohibits presenting it again at trial.[1] Thus, summary judgment, in the amount of the reference award, must be granted to the plaintiff.

Although the insurer in Augenstein did not assert an affirmative defense of fraud, it did claim that the loss was not covered because the insured’s assertion that a theft occurred was false and a sham. It should be noted that one respected trial judge has interpreted Augenstein differently. See Federal Ins. Co. v. Klinck, 1993 U.S. Dist. LEXIS 10254 (D.Mass. 1993) (R. Zobel, J.) (“the issue of whether Klinck fraudulently overvalued the loss in his insurance claims, however, was beyond the scope of the reference and therefore remains for decision"). This judge respectfully disagrees with the Klinck reasoning. Certain allegations of fraud by a policy holder (e.g. not providing correct information when obtaining the policy) plainly are determinations that are beyond the scope of reference. But when the allegations of lack of cooperation or fraud relate solely to the evaluation of the amount of loss, Augenstein teaches that this an issue that is definitively decided by the reference procedure. Otherwise the disappointed party (be it the insured or the insurer) will simply reintroduce the same evidence again at trial hoping for a different result.