**Glenn E. SHEALEY, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY and Chubb Group of Insurance Companies, Defendants.**

**Civil Action No. 12–10723–FDS.**

United States District Court, D. Massachusetts.

Oct. 15, 2012.

Order on Reconsideration in Part April 3, 2013.

---

George C. Deptula, Furman Gregory Deptula, Boston, MA, for Plaintiff.

Mark W. Corner, Riemer & Braunstein LLP, Boston, MA, for Defendants.

### *MEMORANDUM AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS*

SAYLOR, District Judge.

This action arises out of a dispute concerning a homeowner's insurance claim. In October 2006, plaintiff Glenn Shealey suffered a loss of the guest house on his property in Chatham, Massachusetts, due to water damage from a burst pipe. Defendant Federal Insurance Company, a member of defendant "Chubb Group of Insurance Companies," insured the property.[1] Shealey filed a claim under a policy

---

1. The complaint asserts claims against the "Chubb Group of Insurance Companies."

of homeowner's insurance issued by Federal; Federal did not dispute liability, but did dispute the amount owed. The claim ultimately was the subject of a reference to a three-person panel under Mass. Gen. Laws ch. 175, § 99. The panel made a final award of more than $500,000, which has been paid in full by Federal.

Shealey contends that Federal and Chubb breached the insurance contract by not paying the full amount of his covered losses under the policy. He further contends that they breached the implied covenant of good faith and fair dealing by engaging in delay and inappropriate actions with regard to the settlement of his claim, in violation of Mass. Gen. Law ch. 176D. Shealey also requests that the Court issue a declaratory judgment interpreting certain insurance policy provisions.

Defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the motion will be granted in part and denied in part.

## I. *Background*

■ The following facts are stated as alleged in the pleadings, with all disputes and inferences construed in plaintiff's favor.[2]

On October 12, 2006, one or more pipes ruptured at the property of Glenn Shealey at 322 Bridge Street, Chatham, Massachusetts. The incident caused substantial water damage to the guest house on the property. (Complaint ¶¶ 1, 8). Shealey was insured at the time of the loss under a Masterpiece homeowner's insurance policy issued by Federal Insurance Company, which covered the entire property, including the main residence and the guest house. (Complaint ¶ 6). From the date of loss, Shealey and Federal were engaged in communications concerning the adjustment of the claim. (Complaint ¶¶ 10–14).

On April 4, 2008, Federal advised Shealey that the building would have to be demolished and rebuilt, and directed that he obtain estimates for the work. (Complaint ¶ 16). Shealey obtained plans for the rebuilding of the guest house and submitted those plans to the Town of Chatham. (Complaint ¶ 25). Shealey also asked Federal to provide a response to the new estimates of costs for rebuilding, particularly with respect to code upgrades. (Complaint ¶ 26). As of September 15, 2008, Federal indicated that it was still investigating the claim "under a full reservation of rights." (Complaint ¶ 27).

Shealey requested an extension of the two-year statutory period in the policy during which a claim could be brought. Federal initially denied, but later granted, that extension. Shealey filed an "initial complaint" against Federal in Barnstable Superior Court on October 10, 2008. (Complaint ¶ 30).

---

Defendants contend that it is not an entity subject to suit, but it is rather a descriptive term used to identify several separately incorporated and separately capitalized insurance companies, one of which is Federal.

2. To the extent that it is consistent with plaintiff's allegations, the Court also draws on information provided in the exhibits to defendants' motion for judgment on the pleadings. Specifically, the Court draws on the policy itself, and the records of the reference panel

proceedings, because those documents are linked to the complaint and their authenticity unchallenged. "When, as now, a complaint's factual allegations are expressly linked to— and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir.Mass.1998)

The parties continued to exchange information between October 2008 and September 2010, but were unable to agree upon the amount of the loss. (Complaint ¶¶ 31–44). At some point during the negotiations, Federal paid Shealey approximately $220,000. (Complaint ¶ 38). At the time of that payment, Shealey estimated a loss in excess of $640,000 in total. (Complaint ¶ 38).

On September 15, 2010, Federal demanded a referral of the dispute to a three-person panel pursuant to Mass. Gen. Laws ch. 175 § 99 and the provisions of the policy. (Complaint ¶ 45). A three-referee panel heard evidence over multiple days of hearings. The panel issued an award (initially on October 10 and later amended on December 5) in the amount of $513,454.65. (Complaint ¶ 47; Def. Mot. J. Pl. Ex. D). Federal paid the remaining balance within thirty days of the issuance of the award. (Complaint ¶ 47; Def. Mot. J. Pl. Ex. D).

The award did not provide compensation for all the losses claimed by Shealey. (Complaint ¶ 51). First, the panel disallowed Shealey's "loss of use" claim of $105,000, because it determined that it was "not covered by any policy provision." (Complaint ¶ 53; Def. Mot. J. Pl. Ex. D). The relevant portion of the policy, in the "Extra Living Expenses" section, provides:

> "If part of your house which you usually rent to others cannot be lived in because of a covered loss, we cover its fair rental value for the reasonable amount of time required to repair, replace or rebuild the part of the house rented or held for rental, during the period of time it is usually rented." (Def. Mot. J. Pl. Ex. A).

Shealey did not formally rent the property, but permitted a caretaker to reside in it in exchange for his services. (Complaint ¶ 53).

Second, the panel also awarded Shealey $21,970 for landscaping claims; Shealey had sought $77,890. (Complaint ¶ 53; Def. Mot. J. Pl. Ex. D). The policy provided a coverage limit for such losses of "5% of the amount of coverage for the house at which the loss occurs." (Def. Mot. J. Pl. Ex. A). The panel calculated the amount using the value of the damaged building (that is, the guest house), rather than the total insured value of the property. (Def. Mot. J. Pl. Ex. D). The panel also determined on reconsideration that even if the limit were higher, the initial award was supported as a factual matter. (Def. Mot. J. Pl. Ex. D).

Shealey filed this action on January 9, 2012, against Federal and Chubb. The action challenges the amount he has been paid for his claim and the actions of Federal in settling his claim. The complaint alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing; a third count seeks a declaratory judgment interpreting the insurance policy.

## II. *Procedural Posture*

On April 24, 2012, defendants removed this case to this Court. On the same day, they moved for a judgment on the pleadings under Fed.R.Civ.P. 12(c). On June 28, the case was referred to alternative dispute resolution with Magistrate Judge Boal. On August 31, Magistrate Judge Boal reported that the case did not settle, making the motion ripe for resolution by the Court.

## III. *Standard of Review*

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir.2008). It differs from a Rule 12(b)(6) motion primarily because it is filed

after the close of pleadings and "implicates the pleadings as a whole." *Aponte–Torres v. University Of Puerto Rico*, 445 F.3d 50, 54–55 (1st Cir.2006). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a motion for judgment on the pleadings, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). The court will therefore grant defendant's motion for judgment on the pleadings if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV. *Analysis*

### A. *Breach of Implied Covenant Good Faith and Fair Dealing*

■ Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957 (2004). This implied covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 471–72, 583 N.E.2d 806 (1991) (quotations omitted). However, the covenant "may not ... be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385, 805 N.E.2d 957.

■ Plaintiff contends that defendants breached the implied covenant of good faith and fair dealing, primarily by engaging in improper conduct not conforming with Mass. Gen. Laws ch. 176D § 3. In particular, plaintiff contends that defendants violated the statutory provisions requiring prompt action by the insurer. It is well-established that plaintiffs who have been injured by insurance practices violating chapter 176D may bring an action against the insurer under Mass. Gen Laws ch. 93A. *Murphy v. Nat'l Union Fire Ins. Co.*, 438 Mass. 529, 531, 781 N.E.2d 1232 (Mass.2003) (citing *Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675, 448 N.E.2d 357 (1983)).

■ However, plaintiff here asserts a claim for breach of contract, not a claim under chapter 93A. Unfortunately for plaintiff, the two causes of action are not equivalent.[3] As described above, the implied covenant of good faith and fair deal-

---

3. In similar cases concerning insurance disputes, courts have not been a model of clarity on this point, and have allowed the claims to proceed together without distinguishing be-

ing is intended to provide a cause of action for conduct by one party to a contract that unduly frustrates or renders impossible the expected performance of the contract. Chapter 93A, however, provides a cause of action for unfair and deceptive practices and is not confined to the terms of the relevant contract. *Cf. Ayash v. Dana–Farber Cancer Inst.*, 443 Mass. 367, 385, 822 N.E.2d 667 (2005) ("The scope of the covenant [of good faith and fair dealing] is only as broad as the contract that governs the particular relationship."). Simply put, chapter 93A casts a wider net because it is not constrained by the expectations created by the contract.

Here, plaintiff alleges that after defendants advised him that the guest house needed to be torn down and rebuilt, the implied covenant of good faith and fair dealing required them to pay him promptly at least the replacement value of the house (approximately $450,000). (Pl. Opp. 5). He contends that because defendants instead paid him only $220,000 up front, they thereby breached the covenant. (*Id.*). But if the Court were to embrace plaintiff's view, it would be reading a new duty into the policy.[4] As described above, the implied covenant of good faith and fair dealing may not be invoked for this purpose. *Uno Restaurants*, 441 Mass. at 385, 805 N.E.2d 957. Accordingly, plaintiff's claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

### B. *Claims Concerning the Amount of Loss*

■ In Massachusetts, "the prior submission of a claim to arbitration may have a preclusive effect on the same claim in a subsequent court action. The inquiry turns, in large part, on whether the 'right' or 'issue' on which preclusion is sought has been 'the product of full litigation and careful decision.' " *Miles v. Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427, 589 N.E.2d 314 (1992) (quoting *Home Owners Fed. Sav. & Loan Ass'n v. Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455, 238 N.E.2d 55 (1968)). As to reference proceedings pursuant to Mass. Gen. Laws ch. 175, § 99, courts have generally held that the panel's calculation of the amount of loss has binding preclusive effect, but issues of construction of policy terms "remain open for reexamination in an action on the policy." *Augenstein v. Insurance Co. of North America*, 372 Mass. 30, 36, 360 N.E.2d 320 (1977). In other words, the insured can only challenge the panel's award on the basis that it misconstrued a term in the policy; he cannot simply allege that the award was unfair or challenge the factual findings of the panel. *See id.* (relying on *Fox v. Employers' Fire Ins. Co.*, 330 Mass. 283, 113 N.E.2d 63 (1953) to find that referees "find the amount of loss in light of their own interpretation of the terms of the policy, but the question of construction ... remain[s] open for reexamination in an action on the policy."); *see also F. & M. Skirt Co. Inc. v. Rhode Island Ins. Co.*, 316 Mass. 314, 55 N.E.2d 461 (1944) (finding that when "the basis of the dispute has to do with the amount of loss or the fact of loss and no question of liability is involved, the case is a proper one for arbitration."); *accord Audubon*

---

tween them. *See, e.g., Beals v. Commercial Union Ins. Co.*, 61 Mass.App.Ct. 189, 194, 808 N.E.2d 824 (Mass.App.Ct.2004) (referring to the 93A and breach of implied covenant claims collectively as "bad faith claims."). Here the Court breaks with this pattern.

4. This is true regardless of whether the described actions violated Mass. Gen. Laws ch. 176D § 3; plaintiff has not alleged that the provisions of chapter 176D were part of the contract by incorporation or otherwise.

*Hill S. Condo. Ass'n v. Cmty. Ass'n Underwriters of Am.*, 82 Mass.App.Ct. 461, 975 N.E.2d 458 (2012) (interpreting *Augenstein* as articulating the rule that a party who fails to dispute the meaning of the terms of the policy concedes liability).

Here, plaintiff makes a number of allegations as to the panel's determination of his amount of loss. He primarily alleges that the panel did not properly consider the evidence of his estimates, of defendants' estimate, and of the code upgrades required. This is essentially an attempt to challenge the overall award, or at least the factual findings underlying that award. It would be improper for the Court to send these claims to the jury for reevaluation. The purpose of the statutorily mandated reference procedure is to provide a "summary method of establishing the amount of the loss," and allowing the relitigation of that issue before a jury would wholly eviscerate that purpose. *Hanley v. Aetna Ins. Co.*, 215 Mass. 425, 430, 102 N.E. 641 (1913).

For these reasons, the plaintiff's claims will be dismissed to the extent that they are not challenging the panel's interpretation of policy terms.

### C. *Claims Concerning Policy Terms*

Only two of plaintiff's allegations can fairly be read to challenge the panel's award on the basis of its interpretation of specific policy terms. First, plaintiff contends that the panel misinterpreted the term "house" when calculating the limit of his coverage for landscaping. Second, plaintiff contends that the panel misinterpreted the term "rent" when determining whether his "loss of use" claim was valid. For the reasons set forth below, the claim as to the first issue will be dismissed, but the claim as to the second will not.

On its face, the claim regarding the panel's determination of which "house" was to be used when calculating the limit of his coverage for landscaping appears to be a proper subject for adjudication. However, the panel, in its reconsideration of this precise issue, made the specific finding that even if the limit was higher, the initial award was supported as a factual matter. (Def. Mot. J. Pl. Ex. D). As noted, plaintiff cannot challenge this factual finding. Therefore, the claim as to the term "house" will be dismissed.

The claim as to the term "rent," however, is a proper challenge to the panel's award. The award gives as its stated reason for denying the "loss of use" claim the fact that it was "not covered under any policy provision." (Def. Mot. J. Pl. Ex. D). Whether or not plaintiff's permitting his caretaker to reside in the house is covered as "rent" under the policy is a matter of construction that can be challenged in court; it is not a factual finding or a calculation. Therefore, the plaintiff's claim will not be dismissed as to the panel's construction of the term "rent."

### V. *Conclusion*

For the foregoing reasons, defendant's Motion for Judgment on the Pleadings is GRANTED as to all of the plaintiff's claims except the claim as to the "loss of use" and DENIED as to said claim to the extent it concerns the panel's construction of the term "rent."

**So Ordered.**

### *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR RECONSIDERATION*

This action arises out of a dispute concerning a homeowner's insurance claim. In October 2006, plaintiff Glenn Shealey suffered a loss of the guest house on his

property in Chatham, Massachusetts, due to water damage from a burst pipe. Shealey contends that defendant Federal Insurance Company, a member of defendant "Chubb Group of Insurance Companies," breached the insurance contract on the home by not paying the full amount of his covered losses under the policy. The claim ultimately was the subject of a reference to a three person panel under Mass. Gen. Laws ch. 175, § 99.

In its memorandum and order on the defendants' motion for judgment on the pleadings, the Court dismissed all of plaintiff's claims except the claim as to the "loss of use" based on the theory that plaintiff "rented" his home to a caretaker in exchange for services. Defendants have moved for summary judgment on that remaining claim, contending that the policy term "rent" should not be interpreted to include the arrangement that allegedly existed between plaintiff and a caretaker, which involved no transfer of money. Plaintiff has concurrently moved for reconsideration of the Court's memorandum and order, contending that other claims could fairly be read to challenge the reference panel's award on the basis of its interpretation of policy terms. Plaintiff has also moved for leave to amend his complaint to add, among other things, a claim under Mass. Gen. Laws ch. 93A.

For the reasons set forth below, defendants' motion will be denied, plaintiff's motion for reconsideration will be granted in part and denied in part, and plaintiff's motion to amend will be granted.

## I. *Background*

The factual background is recounted in the memorandum and order on defendants' motion for judgment on the pleadings.

## II. *Standard of Review*

### A. *Summary Judgment*

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation omitted). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant ... would permit a rational fact finder to resolve the issue in favor of either party." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

### B. *Reconsideration*

■ The Court has "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R.Civ.P. 59(e). *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 81–82 (1st Cir. 2008). A motion for reconsideration will be granted upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Id.* A Rule 59(e) motion cannot be used to "advance a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 11 (1st Cir.2003). Nor is a Rule 59(e) motion an appropriate

means to "repeat old arguments previously considered and rejected." *Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir.1990).

## III. *Analysis*

### A. *Summary Judgment as to "Loss of Use" Claim*

 In Massachusetts, it is well-settled that the interpretation of an insurance policy is a question of law, making it appropriate for the Court to address on summary judgment. *Sullivan v. Southland Life Ins. Co.*, 67 Mass.App.Ct. 439, 442–43, 854 N.E.2d 138 (2006); *Norfolk & Dedham Mut. Fire Ins. Co. v. Quane*, 442 Mass. 704, 707, 816 N.E.2d 521 (2004). Massachusetts law requires that the terms of an insurance policy be interpreted according to the "fair meaning of the language used, as applied to the subject matter." *Davis v. Allstate Ins. Co.*, 434 Mass. 174, 179, 747 N.E.2d 141 (2001) (quoting *Bilodeau v. Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541, 467 N.E.2d 137 (1984)).

 The term at issue here is "rent," as it is used in the policy's "loss of use" provisions providing coverage for a "reasonable increase in … normal living expenses" arising from the loss of the "fair rental value" of a property that it is "usually rent[ed] to others."[1] The policy itself does not define the term "rent" as it is used for the calculation of "loss of use" payments. According to one treatise, "rent is sometimes defined as the consideration agreed to be paid by one party for the use and occupancy of the real estate of another." 2 POWELL ON REAL PROPERTY

§ 16A.01. The treatise goes on to explain that "[e]ven under the historically narrow definition of rent, the return to the lessor can take many forms," the most common of which is money. *Id.* The law of property in the United States has for centuries recognized leaseholds wherein the tenant farmer provides the landowner with a share of his harvest in exchange for the right to live on and work the land. *See id.* Accordingly, the Court finds that the alleged exchange of caretaking services for use of the Shealey property could constitute "rent" within the meaning of the policy.

 However, the summary judgment inquiry does not end there. There must still be a material issue of fact in dispute as to the existence of that alleged landlord-tenant relationship for the claim to survive summary judgment. At this early stage, plaintiff relies only on his own statements as evidence of the existence of such a relationship. Defendant points to prior statements by plaintiff that appear to contradict his current assertions that he allowed the caretaker to use the guest house in exchange for his services. However, there is a very limited amount of evidence in the record at all due to the parties' request that discovery not commence until after the Court decided the motion for judgment on the pleadings. (*See* Pl. Rec. for Sched. Ord.). The Court finds that on the limited record now before it, a reasonable juror could credit plaintiff's testimony and conclude that he did allow his caretaker to use his home in exchange for services. Accordingly, defendants' motion for summary judgment will be denied.

1. To the extent that plaintiff tries to raise additional "loss of use" claims as to other increased living expenses, the Court finds that these claims were not properly raised before it in earlier filings nor were they properly before the reference panel. Furthermore, and in any event, the claims are not supported by any evidence in the record. Accordingly, the Court will confine its summary judgment analysis to the "loss of use" claim properly before it, which is the claim related to "rent."

## B. *Reconsideration of the Dismissal of All Other Claims*

During oral argument on the pending motions, there was extensive discussion of the preclusive effect of the reference panel's decision and the scope of this Court's review of that decision. The Court, in its previous memorandum and order, found that under Massachusetts law the reference panel's award generally had preclusive effect as to the "amount of loss," and "the insured can only challenge the panel's award on the basis that it misconstrued a term in the policy; he cannot simply allege that the award was unfair or challenge the factual findings of the panel." (M & O at 199). At oral argument, both parties took issue with this interpretation of the regrettably sparse and somewhat dated Massachusetts caselaw on the subject.

However, in urging the adoption of a new formulation of the scope of review, neither party demonstrated how that ruling was a "manifest error of law." *Ruiz Rivera*, 521 F.3d at 81–82. Indeed, the cases in the Court's earlier memorandum and order provide further support for the holding that the reference panel's decision is subject to review on questions of law, but not questions of fact. *See, e.g., Augenstein v. Insurance Co. of North America*, 372 Mass. 30, 38, 360 N.E.2d 320 (1977) (declining jurisdiction over a challenge to a reference panel's award, because the challenge "did not seek to impeach the award for bias of the referees, their refusal to hear relevant proffered evidence, or any other illegality or mistake of law") (internal citations omitted); *Fox v. Employers' Fire Ins. Co.*, 330 Mass. 283, 289, 113 N.E.2d 63 (1953) ("It is one thing to impeach an award for error of law and quite another to assert that referees exceeded their authority in confining their award to the loss or damage covered by the policy. We do not understand that it is contended

that the referees in the case at bar were in error in their construction of the policies."); *Audubon Hill S. Condo. Ass'n v. Cmty. Ass'n Underwriters of Am.*, 82 Mass.App.Ct. 461, 465, 975 N.E.2d 458 (2012) ("As with contracts generally, the interpretation of the unambiguous terms of an insurance policy is a matter of law for the trial court and then the reviewing court.").

Here, the question of whether the term "rent" under Massachusetts law encompasses the alleged arrangement between plaintiff and his caretaker is certainly one that addresses a potential mistake of law on the part of the reference panel. Accordingly, it is properly before the Court. However, plaintiff now urges reconsideration of the ruling as to his other claims challenging the reference panel's decision and find that they, too, are premised on alleged mistakes of law.

 The new arguments, and new averments, made by plaintiff both in his briefing and at oral argument do not compel a different result as to the vast majority of plaintiff's claims. However, the Court is now convinced, upon a reexamination of the record, that the claims as to the panel's award for construction of the basement and the bulkhead are directly based on the panel's interpretation of the law and the policy, and did not constitute merely decisions as to the "amount of loss." Specifically, it is evident from the panel's itemized decision that the awards of $22,000 for "Cast–In–Place Concrete," $0 for "Concrete Bulkhead," and $0 for "Concrete Unit Masonry" were based on the panel's interpretation of certain Town of Chatham building code requirements in conjunction with the terms of the policy's "code upgrade" coverage. Because the interpretation of the building code and the policy terms are both matters of law, the Court now finds that the plaintiff's limited chal-

lenge to the portions of the award that can be explicitly and directly attributed to those interpretations is properly before it.

Accordingly, plaintiff's claims as to the construction of the basement and the bulkhead will be reinstated to the limited extent just described. However, none of plaintiff's other claims can be traced to the panel's alleged mistakes of law, and reconsideration of those claims will be denied.

### C. *Motion to Amend*

Fed.R.Civ.P. 15(a)(2) provides that leave to amend pleadings should be "freely given ... when justice so requires." Leave to amend may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Here, defendants contend that plaintiff unduly delayed moving to amend, and, in any event, the proposed amendment asserts a frivolous claim. As to undue delay, the proposed chapter 93A claim primarily involves the same conduct that has been the subject of the underlying dispute between the parties for a number of years. Therefore, defendants are not materially prejudiced by the addition of this new legal theory; defending against it will require putting forth substantially the same evidence as defending the claims in the initial complaint. It is somewhat troubling that plaintiff neglected to serve defendant with a chapter 93A demand letter at any earlier point; he did, however, serve that letter *prior* to the dismissal of his breach of implied covenant of good faith and fair

dealing claim, in which the Court distinguished between it and a chapter 93A claim. That sequence of events makes it less likely that plaintiff is acting in bad faith or seeking to manipulate the litigation process.

Defendants further contend that the proposed amendment is frivolous. With respect to the proposed chapter 93A claim, defendants contend that it lacks merit and that it is barred by the statute of limitations. The alleged lack of merit of the proposed claim is not so obvious that the motion to amend should be denied on that basis alone. Furthermore, the limitations period for chapter 93A claims is four years; although the initial loss happened in 2006, the events complained of occurred in the context of negotiating the claim, at least some of which occurred within the limitations period. *See* Mass. Gen. Laws ch. 260, § 5A. Finally, this is not a situation where the case would be terminated but for the amendment. *Compare Hatch v. Dep't for Children,* 274 F.3d 12, 19 (1st Cir.2001) ("The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case."); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 59 (1st Cir.1990) (denying a motion to amend after examining the proposed amendment and finding "nothing of decretory significance, that is, nothing which would repair the holes in [plaintiff's] case."). For those reasons, the Court finds that the proposed amendment is not so obviously futile as to warrant the denial of the motion to amend.[2]

Accordingly, the plaintiff's motion to amend the complaint will be granted.

---

2. To the extent that the amended complaint also includes amendments to the other claims and their factual bases, the Court will permit it to be filed in its present form, but the Court will not again reconsider the dismissal of any of those claims.

### IV. *Conclusion*

For the foregoing reasons, defendants' Motion for Summary Judgment is DENIED, plaintiff's Motion for Reconsideration is GRANTED in part and DENIED in part, and plaintiff's Motion to Amend is GRANTED.

**So Ordered.**