STEVEN KENNIE & another[1] vs. NATURAL RESOURCE
DEPARTMENT OF DENNIS[2] & others.[3]

No. 06-P-463.

Barnstable. December 6, 2006. - May 29, 2007.

Present: GELINAS, GREEN, & GRAINGER, JJ.

Further appellate review granted, 449 Mass. 1109 (2007).

*Massachusetts Civil Rights Act. Municipal Corporations,* Shellfish. *Shellfish.
Civil Rights,* Availability of remedy.

In an action brought by landowners claiming that a town shellfish constable
and a local natural resource department had violated their civil rights and
caused them financial and emotional damage as a result of the constable's
sabotaging their application for a dock permit, the trial court judge did not
err in granting summary judgment in the favor of the defendants, where,
considering the evidence in the light most favorable to the plaintiffs, the
constable's alleged conduct, although not exemplary, did not rise to the
level of threats, intimidation, or coercion required to create a cause of ac-
tion under the Massachusetts Civil Rights Act, G. L. c. 12, § 11I. [161-166]

CIVIL ACTION commenced in the Superior Court Department on
May 16, 2002.

The case was heard by *Robert J. Kane,* J., on motions for
summary judgment.

*Douglas H. Wilkins* for the plaintiffs.

*John J. Davis* for Alan S. Marcy.

*Deidre Brennan Regan* for Natural Resource Department of
Dennis.

GRAINGER, J. The plaintiffs, Steven Kennie and his wife Julie
Lane Hagen, appeal the grant of summary judgment dismissing

---

[1]Julie Lane Hagen. As is our custom, we spell Hagen's name as it appears
on the complaint.

[2]The natural resource department of the town of Dennis (department) is de-
scribed more fully in the complaint as the "Natural Resource Department, Con-
servation Commission [commission], . . . a conservation . . . board . . . ."

[3]Alan S. Marcy, in both his individual and official capacity as shellfish
constable and natural resource officer; and Brian Malone, individually and in
his official capacity as natural resource officer. The plaintiffs abandoned their
claim against Malone at summary judgment.

their claims under the Massachusetts Civil Rights Act (act), G. L. c. 12, § 11I. We affirm.

*Background.* "We recite the material facts in the light most favorable to [the plaintiffs], as the nonmoving party." *Lyons* v. *Nutt*, 436 Mass. 244, 245 (2002). The plaintiffs applied for an "order of conditions" (permit) to build a dock from their property in the town of Dennis (town) extending into the Bass River (river). They claimed that Alan Marcy, the town shellfish constable, wrongfully planted shellfish in the riverbed to generate artificially high results in a shellfish survey, thereby causing them to abandon their application for their preferred dock site ("location #3"), in light of their certainty that, based upon the artificially inflated survey results, the town conservation commission (commission) would inevitably reject their application.[4] They claim further that they were thereby forced to expend time and money pursuing a new application for an alternative site ("location #4"), which the commission eventually approved.

On April 19, 2001, the plaintiffs filed their application with the commission for a permit to build a dock from their property into the river at the westernmost spot (location #3). Section 6 of the "Wetlands Protection Bylaw of the Town of Dennis" (bylaw) provides in pertinent part:

> "The applicant shall have the burden of proof by a preponderance of credible evidence that the work proposed . . . will not have an unacceptable significant and immediate or cumulative effect upon the wetland values protected by [the] Bylaw."

To show that their proposed dock would not have a negative impact on the shellfish population in the river, the plaintiffs commissioned a shellfish survey by Jacob Bruinooge, an experienced shellfish survey consultant, who conducted three surveys over the

---

[4]Section 5, second par., of the "Wetlands Protection Bylaw of the Town of Dennis" (by-law) provides in pertinent part:

> "The Commission is empowered to deny a permit for failure to meet the requirements of this Bylaw; . . . for failure to avoid or prevent unacceptable significant immediate and/or cumulative effects upon the wetlands values protected by this ByLaw; where it is deemed that the denial is necessary to preserve the environmental quality of resource areas of either or both the subject land and contiguous land; and where no conditions would be adequate to protect these values."

course of fifteen months. The Bruinooge survey found a very low density of quahogs, .0036 per square foot, in the area around location #3. The plaintiffs contend that this low density falls below the level considered to be "significant," and that therefore installation of a dock at location #3 would not interfere with shellfish protection.

In January, 2002, Marcy enlisted the help of the Department of Marine Fisheries (DMF) to conduct a shellfish survey so that the commission would have more than one survey to consider. The DMF's January survey found in excess of one hundred times more quahogs than the Bruinooge survey, with a density of at least .5 per square foot. The plaintiffs do not dispute the findings of the DMF survey; rather, they claim that the increase in quahogs resulted from clams planted by Marcy.

Claiming that the hearings were tainted by Marcy's planting of quahogs in the river in advance of the DMF survey, the plaintiffs filed the present action in Superior Court against both Marcy and the town's natural resource department (department) in May, 2002, several months before the commission hearings on their application closed. They claimed that Marcy individually, and the department, acting through Marcy in his official capacity, had violated their civil rights and caused them financial and emotional damage as a result of Marcy's planting shellfish in the riverbed, thereby sabotaging their application for a dock permit in location #3.[5,6]

---

[5]As the complaint contained Federal claims alleging violation of rights protected by the United States Constitution, the defendants removed the case to Federal court. After the plaintiffs voluntarily amended the complaint to omit the Federal claims, the case was remanded to the Superior Court.

In April, 2003, with new counsel, the plaintiffs moved to dismiss the complaint voluntarily or, in the alternative, for leave to amend by repleading the Federal claims contained in the original complaint. Their motion was denied on June 24, 2003, the motion judge stating, "Change in plaintiff[s'] counsel should not create rights prior counsel waived." On appeal, this issue was not addressed by the plaintiffs until the submission of their reply brief, and is therefore "not properly before us." *Higgins* v. *Department of Envtl. Protection*, 64 Mass. App. Ct. 754, 758 n.10 (2005), quoting from *Henderson* v. *Commissioners of Barnstable County*, 49 Mass. App. Ct. 455, 459 (2000). Even were we to consider the argument, there was no abuse of discretion, and the result would be the same. See *Longval* v. *Superior Ct. Dept. of the Trial Ct.*, 437 Mass. 1018, 1019 n.2 (2002).

[6]The plaintiffs then filed a permit application for location #4, on the east

*Discussion.* 1. *Standard of review.* We begin with the familiar principle that "[t]he standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). Our review is de novo, see *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997); *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003), and "[w]e may consider any ground supporting the judgment." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, *supra.*

2. *Violation of the act.* To prove a violation under the act, the plaintiffs must show not only that Marcy interfered or attempted to interfere with their exercise of "rights secured by the constitution or laws of the commonwealth," but that he did so "by threats, intimidation or coercion." G. L. c. 12, § 11H, inserted by St. 1979, c. 801, § 1.[7] See *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 627 (1989). The plaintiffs claimed that on three separate occasions Marcy made statements that

side of their property. The commission denied the application on December 6, 2002. In January, 2003, the plaintiffs filed a second complaint in the Superior Court, pursuant to G. L. c. 249, § 4, appealing the commission's denial of their application for location #4. Their motion for judgment on the pleadings was denied on December 30, 2004. The plaintiffs subsequently filed a new application for location #4, and in February, 2005, the commission issued an order of conditions approving their application. According to the plaintiffs, they received a pier permit for location #4 in early 2006, and contested conditions attached to the commission's approval were removed. Accordingly, in the case at bar, the plaintiffs do not appeal from the summary judgment entered for the department.

[7]General Laws c. 12, § 11H, lays out the elements of the violation and provides in pertinent part:

> "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."

Section 11I allows for a private right of action to vindicate the rights established in § 11H.

he would prevent them from installing the dock, that these statements constituted "threats, intimidation or coercion," and that Marcy's statements interfered with the plaintiffs' constitutionally protected rights.[8]

The Supreme Judicial Court has specifically defined each of these terms, and we examine Marcy's statements[9] to determine whether they rise to the level of either threats, intimidation, or coercion, as is required to state a cause of action under the act. We apply the objective standard of whether a reasonable person would be threatened, intimidated, or coerced by Marcy's behavior. See *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 474-475, cert. denied, 513 U.S. 868 (1994).

A "threat" is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Haufler* v. *Zotos*, 446 Mass. 489, 505 (2006), quoting from *Planned Parenthood League of Mass., Inc.* v. *Blake, supra* at 474. The threatened harm need not be physical. See *Buster* v. *George W. Moore, Inc.*, 438 Mass. 635, 647-648 (2003) (comparing §§ 11H and 11I "civil violation to use 'threat, intimidation or coercion' . . . with G. L. c. 265, § 37, . . . criminal violation to use 'force or threat of force' ").[10]

In this case, although Kennie admitted that he was "not in fear of physical harm," he stated that he "definitely was in fear of financial harm," and Hagen claims that she feared both physical and financial harm. The question is whether their fears were

---

[8]Specifically, the plaintiffs' amended complaint claimed violation of their rights to equal protection and due process under the Massachusetts Declaration of Rights. At summary judgment they additionally argued interference with their petitioning rights under the Massachusetts Declaration of Rights. They make no argument on appeal as to equal protection, and that claim is waived.

[9]First, on or about November 15, 2001, Marcy allegedly told Kennie that he was "mandated to do whatever it takes to prevent docks from going in this area." Second, on or about November 27, 2001, Marcy allegedly told Kennie that if Marcy had known of the Kennies' shellfish survey before they conducted it, Marcy "would have done something about it." Third, on or about January 10, 2002, when Kennie told Marcy that their shellfish survey had found very few shellfish in the proposed dock location, Marcy allegedly responded, "We can take care of that."

[10]See also *Smith* v. *Longmeadow*, 29 Mass. App. Ct. 599, 603 (1990) (interpreting "threats, intimidation or coercion" in their "natural connotation, that of forcing submission by conduct calculated to frighten, harass, or humiliate," without regard to the use of physical force).

objectively reasonable. We conclude that in the context in which Marcy spoke to them, an objectively reasonable person seeking a dock permit would have understood Marcy's words to refer to the permitting process. The town had established rules and procedures for applying for a permit, and when Marcy allegedly said that he was "mandated to do whatever it takes" to keep the dock from going in, the reasonably objective interpretation of that statement is that Marcy's view of his duties required him to offer vigorous opposition to the dock permit at the hearings. It is not reasonable to assume that Marcy was expressing an intent to inflict physical harm. Moreover, to the extent that Marcy's opposition might reasonably cause the plaintiffs to anticipate expending funds in pursuit of their permit application, this does not qualify as financial harm under the act. See *Buster* v. *George W. Moore, Inc.*, 438 Mass. at 648, quoting from *Sena* v. *Commonwealth*, 417 Mass. 250, 263 (1994) ("[g]enerally, by itself, a threat to use lawful means to reach an intended result is not actionable under § 11I").

"Intimidation" is "putting [one] in fear for the purpose of compelling or deterring conduct." *Haufler* v. *Zotos*, 446 Mass. at 505, quoting from *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. at 474. Kennie claimed that his fear of the financial harm that would result from continued pursuit of a dock permit for location #3 after Marcy had planted the shellfish "forced" him to modify the application and spend more money on a new application, for location #4. This claim does not fall within the meaning of "intimidation" under Massachusetts law. Marcy's words, fairly considered, were no more than a promise of vigorous opposition. While such a promise would reasonably stimulate a reconsideration of the effort and expense necessary to secure the permit, it does not rise to the level of intimidation defined in *Haufler, supra*. The plaintiffs themselves have demonstrated this to be true by their reaction, which was to work successfully within the permitting process to discredit Marcy and, material to our consideration, eventually obtain a permit (see note 6, *supra*).

Hagen testified to fear of "repercussions" from Marcy because he carried a firearm while on duty. We do not believe that this constitutes an objectively reasonable conclusion, again consider-

ing the context of Marcy's statements. Hagen had no objectively reasonable basis to assume that Marcy would use his firearm to prevent her from installing a dock on her property, especially given the absence of any accompanying overt physical threat.

" 'Coercion' is 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.' *Buster* v. *George W. Moore, Inc.*, [438 Mass. at] 646, quoting *Planned Parenthood League of Mass., Inc.* v. *Blake, supra.* See also *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, 565[, cert. denied, 516 U.S. 931] (1995), quoting Webster's New Third Int'l Dictionary 439 (1981) (defining '[c]oercion' under the act as 'the use of physical or moral force to compel [another] to act or assent')." *Haufler* v. *Zotos*, 446 Mass. at 505. Hagen testified in her deposition that she was neither intimidated nor coerced. Kennie testified in his deposition that Marcy never "physically forced" him to do something against his will. Thus the only remaining question is whether Marcy's threats and conduct coerced the plaintiffs into abandoning the permit application for location #3, even without the use of physical force.

While cases finding coercion under the act have typically involved the application of physical force,[11] the Supreme Judicial Court has said that in some circumstances "certain forms of op-

___

[11]See, e.g., *Bell* v. *Mazza*, 394 Mass. 176, 179-180, 183-184 (1985) (evidence of threats, intimidation, or coercion sufficient to withstand motion to dismiss where Mazza, in addition to threatening to do "anything," "at any cost," to prevent Bell's construction of a tennis court, also formed a neighborhood association with other abutters to stop the construction, attempted to. induce the electric company to discontinue service to Bell's property, and "at one point physically blocked Diana Bell's passage, responding to her greeting with several intemperate epithets"); *Planned Parenthood League of Mass., Inc.*, v. *Blake*, 417 Mass. at 475 (finding threats, intimidation, and coercion where protesters "intentionally used their bodies or Kryptonite bicycle locks, or both, to prevent others physically from entering, leaving, or using medical facilities to obtain abortions to which they were constitutionally and lawfully entitled"); *Haufler* v. *Zotos*, 446 Mass. at 507 (finding threats or intimidation where, among other things, Zotos ran at a worker with a rake and forced another worker and police officer off Haufler's land, shouting epithets); *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. 740, 742 (2002) (finding threats and intimidation where, among other things, Armstrong's dogs ran onto the Ayaslis' property on one occasion, and frightened the Ayasli children as they walked on the right of way to their home; and where members of the Armstrong family hit golf balls from their property into the water on the Ayaslis' property

pression or domination not involving physical force might constitute coercion under the [a]ct." *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. at 566 n.18. See *Buster* v. *George W. Moore, Inc.*, 438 Mass. at 648 ("in certain circumstances, economic coercion, standing alone, may be actionable under the act"). In both cases in which the Supreme Judicial Court has explored the possibility of nonphysical coercion, it has concluded that the circumstances did not warrant such a finding. Because the force applied in this case was of no greater intensity than in those cases, we briefly recite their facts.

In *Buster* the defendants obtained an order of conditions from the local conservation commission allowing them to develop wetlands adjacent to Buster's property. 438 Mass. at 638-639. Buster had opposed the application; his subsequent appeals to the Department of Environmental Protection and the Superior Court could have delayed the project for several years. *Id.* at 639. When the defendants learned that Buster was in default on his mortgage, they purchased Buster's mortgage, subsequently initiating foreclosure proceedings when Buster refused to drop his appeals. *Id.* at 640. The court nonetheless found no coercion actionable under the act. *Id.* at 649.·

The *Freeman* case is similar to the present one, also involving the denial of a desired permit. Freeman sought approval from the local planning board for a subdivision plan, which included Lost Oak Road, a new subdivision road. *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. at 550. The town's civil engineer initially found that the "sight distance" (i.e., a driver's line of vision) at the intersection of Lost Oak Road and the existing right-of-way complied with the requirements of the planning board's regulations. However, after a public hearing and reevaluation of the intersection, the engineer recommended increasing the sight distance above that required in the regulations. The board agreed that greater sight distances were necessary for the safety of pedestrian and vehicular traffic, and rejected Freeman's plan. *Id.* at 550-552. Freeman appealed the board's decision to the Superior Court, which held, among other things, that Freeman's plan for the intersection did meet the requirements of the board's regulations, and that the board

where the children were swimming).

exceeded its authority in requiring a greater sight distance. *Id.* at 552-553. Despite the court's decision, the board continually refused to accept Freeman's modified subdivision plans, necessitating several trips to Superior Court over the course of two years. *Id.* at 553-557. Freeman then brought suit against the board, including a claim pursuant to G. L. c. 12, § 11I, for violating his rights under the subdivision control law, G. L. c. 41, § 81M. *Id.* at 564.

Because there was no evidence of threats or intimidation, the Supreme Judicial Court analyzed Freeman's claim only for evidence of coercion. *Id.* at 564-565. While the decision did not foreclose the possibility that coercion may be found in some cases not involving physical force, *id.* at 566 n.18, the court concluded that the board's erroneous withholding of approval of Freeman's plan did not alone give rise to liability under the act. *Id.* at 565-566.

By these standards, Marcy's alleged conduct, although "not exemplary," *id.* at 563, and fairly characterized as "dubious and even deplorable," *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.*, 422 Mass. 459, 467 (1996), did not rise to a level that could be considered coercive under the act.

*Conclusion.* Viewing the facts in the light most favorable to the plaintiffs, we conclude that Marcy's actions did not rise to the level of threats, intimidation, or coercion required to create a cause of action under the act, and therefore, albeit for reasons different from those enunciated below, see *Valcourt* v. *Zoning Bd. of Appeals of Swansea*, 48 Mass. App. Ct. 124, 130 (1999), the defendants were entitled to judgment as matter of law.[12]

*Judgment affirmed.*

---

[12]We need not, and do not, reach the issue decided below, namely, whether the plaintiffs were exercising a constitutionally protected right. Nor do we decide whether, by his reprehensible and unethical planting of shellfish, which we assume to have occurred for purposes of summary judgment, Marcy interfered, or attempted to interfere, with such a right.