82 Mass. App. Ct. 461 (2012)                                          461

Audubon Hill South Condominium Assn. *v.* Community Assn. Underwriters of America, Inc.

AUDUBON HILL SOUTH CONDOMINIUM ASSOCIATION *vs.* COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC.

No. 11-P-1546.

Middlesex. June 4, 2012. - September 20, 2012.

Present: VUONO, SIKORA, & FECTEAU, JJ.

*Insurance,* Reference process, Coverage. *Practice, Civil,* Summary judgment, Reconsideration, Motion to amend.

In a civil action arising from a dispute over coverage under an insurance policy, the judge, in granting summary judgment in favor of the defendant insurer, correctly concluded that a prior submission to a panel of referees of the question of the value of the loss incurred had no binding effect on the question of coverage and liability, where the insurer had consistently maintained that the terms of the policy placed the loss outside the policy's coverage, and where the referees themselves expressly had abstained from the question of coverage. [465-467]

In a civil action arising from a dispute over coverage under an insurance policy, the judge properly granted summary judgment in favor of the defendant insurer, where the claimed loss (damage to a condominium unit from the subsidence of a foundational slab) indisputably fell outside the policy's coverage clause by reason of an event of collapse and inside the policy's exclusionary clause for loss by reason of earth movement. [467-469]

In a civil action, the judge did not abuse her discretion in denying, without a hearing, a motion for reconsideration of a grant of summary judgment in favor of the defendant, where the plaintiff already had received a written, reasoned explanation of the summary judgment ruling, and where the motion lacked merit and burdened the resources of both the defendant and the court, in that it inappropriately introduced one new argument and also repeated laboriously the plaintiff's prior unsuccessful arguments, but lacked a specification of changed circumstances. [469-471]

In a civil action, the judge did not abuse her discretion in denying the defendant's motion, submitted after cross motions for summary judgment had been filed and were waiting argument, to amend its answer to add counterclaims, where the counterclaims would have opened up broad new issues and corresponding avenues of discovery, and where any prejudice to the defendant arising from denial of the motion to amend was curable. [471-473]

CIVIL ACTION commenced in the Superior Court Department on May 6, 2009.

Motions for summary judgment and for leave to amend the answer and assert counterclaims were heard by *Kimberly S. Budd*, J., and a motion for reconsideration was considered by her.

*James E. Grumbach* for the plaintiff.

*William T. Kennedy* (*Christine M. McPhee* with him) for the defendant.

SIKORA, J. These cross appeals present a dispute over insurance coverage. Audubon Hill South Condominium Association (Audubon or association) sued its insurer, Community Association Underwriters of America, Inc. (CAU), to establish coverage of damage to one of its units from the subsidence or tilt of a foundational slab. At the conclusion of discovery, each party moved for summary judgment. Audubon insisted that the computation of the amount of loss by a statutorily mandated[1] panel of referees resolved not only the value of the loss, but also the question of its coverage. CAU contended that the information resulting from discovery placed the loss outside the coverage terms of the governing policy. A judge of the Superior Court granted summary judgment in favor of CAU. On appeal we consider the proper scope of the reference or referee process mandated by G. L. c. 175, § 99; the coverage terms of the policy; the proper use of a motion for reconsideration authorized by Rule 9D of the Rules of the Superior Court (2004); and the propriety of the denial of CAU's motion to amend its answer to assert counterclaims. Those considerations lead to an affirmance of the judgment in favor of CAU and of the order denying reconsideration.

*Background.* 1. *Facts.* The following facts emerge from the summary judgment record as undisputed. We reserve certain details for analysis of the parties' arguments. For the year June 1, 2006, through May 31, 2007, CAU provided a comprehensive "Condominium Policy" to Audubon. Coverage included, among other risks, loss or damage to the association's buildings and grounds.[2] When owner Marilyn Barstow moved into her unit in

---

[1] A requirement of G. L. c. 175, § 99, as discussed below.

[2] The condominium development consisted of twenty two-story buildings containing a total of forty residential units, located in the town of Acton. Other categories of coverage extended to premises liability and to loss or injury caused by the acts or omissions of association directors and officers.

September of 2005, she had noticed a slight depression or "little dip" in the flooring at her front entryway and in the kitchen.[3] Over the course of her residence during the next seventeen months she detected an additional depression in the floor of the master bedroom.[4] Finally, as she was cleaning the unit in March of 2007, she saw that the kitchen flooring beneath the refrigerator was separating from the baseboard. She reported her observations to the association president.[5] He inspected the flooring at all three points, and promptly caused the association manager, project architect, and a consulting engineer to examine the problem. Still during March, 2007, Audubon submitted its claim to CAU. It recited that a "[b]roken [p]ipe under the basement slab has caused [the] slab to sink several inches."

In April an engineer investigated the claim for CAU. He concluded that the subsidence of the foundational slab had likely resulted from an ongoing leak of a water pipe below the affected unit and that it had continued undetected "for an extended period of time."[6] Consequently, in May, CAU reported to Audubon that its investigation indicated that the continuing leakage had eroded supporting soil below the slab and caused it to settle over time. It concluded that gradual settlement resulting from movement of water or earth was a risk not covered by the condominium policy.

In June of 2007, Audubon's consulting engineer submitted written opinions specifying that "hydro-compaction related to a leak in [a] water pipe" five feet below had caused a two-inch deflection (sinking) of a 150-square-foot basement slab along

---

[3]In 2005, Barstow's home inspection consultant had reported the depression near the front door. Barstow estimated its depth at about one-quarter inch, believed that it resulted from "normal settling," and went forward with the purchase.

[4]The dip in the bedroom floor became noticeable "as time went on" because her computer desk file drawer would slide open on its own more frequently until she could no longer keep it closed at the time of her move from the unit in February and March of 2007.

[5]The president had inspected the entryway and kitchen depressions in September of 2005 and had regarded them (at a depth of one-sixteenth to one-eighth of an inch) as the results of "normal settling." By March of 2007 he viewed them as more serious problems in need of repair.

[6]Because the leak was "upstream" from the unit water meter, the loss of water would not show up as measurable consumption.

the foundational wall. He opined also that the slab had cracked and deflected "suddenly" rather than by gradual settlement because it "did not crack in the vicinity of the water leak" and did not sink "slowly to fill the void formed by the consolidated soils." He did not explain the causal connection between the location of the cracks and the pace of the sinking.

Because the parties could not agree on the value of the loss (i.e., the cost of repair or replacement of the floor of the damaged unit), in accordance with G. L. c. 175, § 99, Twelfth, and the conforming provision of the policy,[7] they submitted that question to a panel of three referees. Prior to the hearing, counsel for CAU served each referee (and Audubon) with a letter reserving the issue of coverage and liability from the reference.[8] The referees found the amount of the loss to be $63,909.

2. *Procedure.* That determination did not produce a settlement. Audubon launched the present action in Superior Court upon claims for breach of the policy contract, declaratory judgment, reformation, and violation of G. L. c. 176D and G. L. c. 93A. CAU continued to resist the claim as uncovered. By a detailed memorandum of decision of the parties' cross motions for summary judgment, the judge concluded that the referees' decision had no effect upon the issue of liability and that the policy excluded coverage of Audubon's claim. Summary judgment entered in favor of CAU. Audubon moved for reconsideration. The judge denied the motion. Audubon has appealed from the summary judgment and from the order denying reconsideration. CAU has cross-appealed; it challenges the judge's denial of its

---

[7]The policy endorsement incorporated the mandatory language of the statute:

"In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested [referees] . . . and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss . . . ."

[8]The reservation of rights letter expressly relied upon G. L. c. 175, § 101E, which preserves to an insurer "any legal defense to the claim in respect to which the reference proceedings are held" unless the parties agree in writing to empower the referees as arbitrators under the terms of the Uniform Arbitration Act, G. L. c. 251.

motion to amend its answer by addition of counterclaims charging Audubon with bad faith litigation.

*Analysis.* Because we are working with the same factual materials available to the motion judge, we review the allowance of summary judgment de novo. See *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007); *Kennie* v. *Natural Resource Dept. of Dennis*, 69 Mass. App. Ct. 158, 161 (2007), *S.C.*, 451 Mass. 754 (2008). We ask whether the evidence, in the light most favorable to the party losing the contest of cross motions, and the controlling law entitle the prevailing party to judgment. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991); *DiLiddo* v. *Oxford St. Realty, Inc.*, 450 Mass. 66, 70 (2007). As with contracts generally, the interpretation of the unambiguous terms of an insurance policy is a matter of law for the trial court and then the reviewing court. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982); *Clendenning* v. *Worcester Ins. Co.*, 45 Mass. App. Ct. 658, 660 (1998). If the issue of interpretation and application of the policy requires fact finding, we ask whether the opposing party has any "reasonable expectation" of proving the essential elements of its claim at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

1. *Scope of the reference process.* Audubon's first argument requires the coordinated application of the two main provisions governing the claim reference procedure. Under G. L. c. 175, § 99, Twelfth, a Massachusetts standard form policy insuring against property damage by fire (one of the risks covered by the CAU policy) must include a provision of the following language: "In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount . . . shall be referred to three disinterested [referees] . . . ; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and [the] reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for [the] loss." *Ibid.*, as appearing in St. 1951, c. 478, § 1. See G. L. c. 175, § 100 (specifying the process of referee selection). In elaboration, G. L. c. 175, § 101E, states that "[a] company which . . . joins in reference proceed-

ings shall not thereby be held to have waived any legal defense to the claim [subject to] the reference proceedings . . . and [the] proceedings shall fix only the amount of the loss sustained by the insured . . . unless both parties shall agree in writing that the reference . . . shall proceed under the provisions of [G. L. c. 251, the Uniform Arbitration Act]."

Audubon argues that CAU failed to dispute the meaning of the terms of the policy and therefore conceded the issue of liability as the insurer had done in *Augenstein* v. *Insurance Co. of N. Am.*, 372 Mass. 30, 36-38 (1977). For several reasons, that position cannot withstand the comparison of the *Augenstein* circumstances to the present case. Augenstein claimed a theft of jewelry from his house and under a homeowner's policy sought the maximum recovery of $50,000. The carrier denied coverage because it did not believe that a loss had occurred. *Id.* at 31.

The claim went to the reference process. The insurance company did not invoke any terms of coverage against Augenstein, but submitted its challenge to the occurrence of the loss to the referees. They found the loss to be genuine and to be worth the policy limit of $50,000. *Ibid.* Augenstein then sued the company in Superior Court upon the merits of the claim and upon the alleged conclusive force of the reference award. *Id.* at 31-32. A jury found against him on the merits. A judge rejected the conclusive effect of the award. *Id.* at 32-33. On appeal, the court reinstated the award as presumptively conclusive because the company had not raised or reserved any issue of interpretation or application of the policy for the courts, and had left the factual question of the occurrence of the loss to the referees.[9] *Id.* at 34, 36-38.

---

[9]In the court's view, the company's position conceded the amount of any resulting loss to be one within the meaning of the § 99 phrase "under the policy" and to eliminate the need for "repetitious or fragmented" judicial proceedings inconsistent with the "pragmatic purpose of the reference clause" to encourage settlements or efficient resolution of claims without lawsuits. *Augenstein*, 372 Mass. at 36.

However, in a case involving a "question of construction" (i.e., "a problem of coverage going to ultimate liability"), the "referees [are] still to find the amount of loss in light of their own interpretation of the terms of the policy, but the question of construction would remain open for reexamination in an action on the policy, if one should eventuate." *Id.* at 37. "Their views so far as ultimate liability goes are wholly tentative and in no sense a decision on

Here, with consistent emphasis CAU maintained that the terms of the policy placed the loss outside its coverage. Its original claim denial letter of May 22, 2007, to Audubon took that stance. CAU's reservation of rights letter stated seven times in five paragraphs that it was withholding all issues of liability from the referees and cited G. L. c. 175, § 101E, at its conclusion. It specifically referred to policy language: "In particular a claim of loss by peril such as collapse was not found as warranted. This is a loss that appears to be a result of settling and long term deterioration but in any event not covered under the issued policy." Finally, in the course of the hearings, the referees themselves expressly abstained from the question of coverage.[10] The motion judge accurately distinguished *Augenstein* and denied any binding effect of the reference damages award upon the question of coverage and liability.

2. *Coverage.* a. *Scope of risk.* Audubon characterizes the disputed policy as an "all risk" contract covering all risks of loss except for specifically named exclusions. See *Talbot* v. *Horace Mann Ins. Co.*, 19 Mass. App. Ct. 93, 94 n.3 (1984). CAU views it as a "named perils" or "enumerated risk" policy covering only those risks specifically included.

The opening paragraphs of the policy[11] expressly assign covered causes of loss to one section of the document and excluded causes to another. The reference to the separate categories and the specificity of the causes within the categori-

---

that underlying question." *Id.* at 37 n.12, quoting from *Fox* v. *Employers' Fire Ins. Co.*, 330 Mass. 283, 287-288 (1953).

*Augenstein* remains a difficult and seemingly exceptional case. The court's narration indicates that the company viewed Augenstein's claim as a "sham" but adds that it never raised the legal defense of fraud capable of preserving its position on liability from the referees and for the courts. *Id.* at 32 & n.3.

[10]A referee stated to Audubon counsel:

> "The claim has been denied, . . . we'll give you a certain amount of latitude . . . [but] the line of questioning that we're going into relates to the company's decision on the coverage for the claim, which we're not here to determine."

[11]"I. PROPERTY DIRECT COVERAGES SECTION. We will pay for direct physical loss of or damage to 'covered property' caused by or resulting from any COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS. . . . Unless otherwise specified in this section, all EXCLUSIONS under III.B. EXCLUSIONS apply."

cal sections are the language of enumeration. The "named perils" nature of the policy required Audubon to demonstrate inclusion within a specific risk and avoidance of a described exclusion.

b. *Coverage by inclusion in a specified risk.*[12] Audubon maintained that the subsidence of the slab and resulting tilts in the floor qualified as a covered "collapse." The policy required a collapse (1) to have been "abrupt" and (ii) to have prevented the occupancy of a structure (or its collapsed part) for its intended purpose.[13]

First, the evidence did not create a genuine factual issue of an abrupt or sudden occurrence. Although Audubon's engineer used the word "sudden" in his description, in deposition he explained his understanding of that word to include a drop in the slab over a period up to six months. In addition, the unit resident described the changes in the floor as gradual through the period from September, 2005, to March, 2007.

Second, no evidence supported a factual question of uninhabitability of the unit. Marilyn Barstow remained in it throughout the development of the loss. At deposition she reported that she left for family reasons and with some reluctance. "I was happy there. I was not happy to move." Collapse *and* uninhabitability were both necessary for coverage. The evidence of collapse was inadequate and of uninhabitability nonexistent.

c. *Exclusion clause.* One of the policy's exclusions withheld coverage of losses resulting from "EARTH MOVEMENT," defined as "including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, . . . erosion, improperly compacted soil and the action of water under the ground surface."

---

[12]The motion judge resolved the question of coverage by application of the exclusion clause discussed next. Audubon, in Superior Court and on appeal, has consistently argued that its loss falls within the inclusive "collapse" clause. For completeness, we address both grounds. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. at 120; *Rasheed* v. *Commissioner of Correction*, 446 Mass. 463, 478 (2006) (reviewing court may affirm summary judgment upon any and all grounds appearing in the record).

[13]"XXVIII. DEFINITIONS SECTION . . . 11. 'Collapse' . . . means an abrupt falling down, caving in or flattening of a building, structure or of any part of a building or structure with the result that the building, structure or the collapsed part of either cannot be occupied for its intended purposes."

Audubon's engineer opined that a leaking pipe had caused soil changes and earth movement under the foundational slab. Once he acknowledged the causal role of earth movement, the loss moved out of the policy coverage. See, e.g., *Kelley* v. *Iantosca*, 78 Mass. App. Ct. 147, 155 (2010) (if it is clear from the record that a loss falls squarely within a stated policy exclusion, denial of coverage and resulting summary judgment are proper).[14]

In sum, the evidence of the summary judgment record placed the claimed loss indisputably outside the coverage clause for loss by reason of an event of collapse and inside the exclusionary clause for loss by reason of earth movement. The motion judge correctly awarded summary judgment to CAU on the merits of coverage.

3. *Motion for reconsideration.* In reaction to the allowance of adverse summary judgment, Audubon moved for reconsideration pursuant to Rule 9D of the Rules of the Superior Court (2004).[15] In her memorandum of decision, the judge had provided the parties with eight pages of explanation of her ruling. She denied the motion for reconsideration without further elaboration. Audubon now argues in conclusory fashion that the denial constituted an abuse of discretion.

Audubon's motion consisted of nine pages; it incorporated a copy of a three-page, single-spaced letter previously sent by Audubon's counsel to CAU's claim representative. Counsel attached to the motion an additional fifty-four pages of "exhibits"

---

[14]The "earth movement" exclusion included an anticoncurrent cause provision withholding coverage from loss or damage resulting from any involvement "concurrently or in any sequence" of earth movement with a covered cause of loss. Massachusetts recognizes and enforces unambiguous anticoncurrent cause provisions. See *Boazova* v. *Safety Ins. Co.*, 462 Mass. 346, 356-359 (2012); *Surabian Realty Co.* v. *NGM Ins. Co.*, 462 Mass. 715, 719-723 (2012).

[15]The rule commits the procedure and disposition of the motion to the discretion of the original judge:

"Upon filing, the clerk shall transmit the motion and supporting papers to the Justice who decided the original motion. If, upon reviewing the motion and supporting documents, the Justice who decided the original motion desires to hold a hearing on the motion for reconsideration, he or she may schedule a hearing thereon. Alternatively, he or she may refer the motion for reconsideration to the Regional Administrative Justice for the region where the case is pending."

comprised of copies of prior correspondence to CAU, insurance industry literature upon the meaning of "collapse," and extended excerpts from a "businessowners property coverage special form." The substance of the argument in support of reconsideration was (1) that the policy was an "all risk" contract, a contention omitted from Audubon's original motion papers; (2) repetition of the argument that the loss fell within the "collapse" coverage; and (3) repetition of the argument that it fell outside the "earth movement" exclusion. In response CAU submitted a thirteen-page opposition in defense of the summary judgment.

As Audubon recognizes, a motion for reconsideration calls upon the discretion of the motion judge. Decisional law has developed several practical criteria for submission of a request for a second consideration. They apply with special force if the applicant has already received a written, reasoned explanation of a ruling. The applicant should specify (1) "changed circumstances" such as (a) newly discovered evidence or information, or (b) a development of relevant law; or (2) a particular and demonstrable error in the original ruling or decision. See *Peterson* v. *Hopson*, 306 Mass. 597, 600 (1940); *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 622 (1989).[16] The moving party should specify the appropriate ground or grounds at the outset of the motion. In the absence of that preface, the judge may exercise his or her discretion to refuse to entertain the motion. "After the denial of one motion, a second motion based on the same grounds need not be entertained." *Peterson* v. *Hopson, supra.*

Abuse of the reconsideration mechanism will expose the responsible party or counsel to sanctions within the discretion of the motion judge.[17] In particular, if a frivolous motion causes an opposing party to expend fees and costs in the reasonable protection of a favorable ruling, especially one as important as a dispositive result, the judge possesses authority to assess those

---

[16]In their discretion, motion judges of course may see other grounds for reception and decision of the motion.

[17]A party or counsel should not abusively employ a motion for reconsideration as (1) a mere repetition of previously failed arguments, (2) a means of stalling against the implementation of an adverse ruling, (3) an effort to oppress an opposing party by infliction of delay, expense, and effort, (4) a medium for quarreling with the judge, or (5) an exercise in posturing for the client.

fees and costs against the responsible attorney in accordance with Mass.R.Civ.P. 11(a), as amended, 456 Mass. 1401 (2010). See *Psy-Ed Corp.* v. *Klein*, 62 Mass. App. Ct. 110, 113-114, 117-118 (2004) (application of rule 11[a] to abusive motion practice).

In this instance, the motion lacked merit and burdened both the private resources of the opposing party and the public resources of the court.[18] Over the course of sixty-three pages of material, the motion introduced a *new* argument inappropriate for *re*consideration (the "all risks policy" contention) and merely repeated laboriously its prior unsuccessful arguments (the "collapse" inclusion position and the "earth movement" exclusion position). The judge's concise denial was an exercise of sound discretion.

4. *Denial of CAU's motion to amend.* While the parties' cross motions for summary judgment were filed and awaiting argument, CAU submitted a motion to amend its answer by addition of counterclaims. See Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). It charged that Audubon had manipulated the report of its consulting engineer and violated its contractual duty to act honestly and cooperatively in the investigation of the claim by the insurer. On that basis it proposed counts for (1) breach of the policy contract; (2) breach of the duty of good faith and fair dealing; (3) unfair and deceptive conduct in violation of G. L. c. 93A, §§ 2, 9, or 11; and (4) an award of attorney's fees and costs authorized by G. L. c. 231, § 6F, for defense against an action "wholly insubstantial and not advanced in good faith." As part of her memorandum and decision upon the summary judgment issues, the judge denied the motion to amend upon grounds of lateness (submission more than one year after the tracking order deadline for amendments), burdensome additional discovery, and delay of trial or other resolution of the litigation. CAU appeals from the ruling as an abuse of discretion.

Rule 15(a), as adopted in 1974, provides that leave to amend "shall be freely given when justice so requires." However, since the leading decision of *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289-290 (1977), the cases have

---

[18]In her denial of the motion, the judge reported that she had reviewed and considered the parties' submissions.

emphasized the nature of a rule 15(a) decision as a matter of discretion guided by such considerations as lateness, delay, futility, suspect motive, prior opportunity to plead the claim, and undue prejudice to the opposing party. *Ibid.* See, e.g., *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264-265 (1991); *Leonard* v. *Brimfield*, 423 Mass. 152, 157, cert. denied, 519 U.S. 1028 (1996).

Abuse of discretion, as charged by CAU, is a demanding standard. Among its various formulations, two expressions are especially durable. Abuse of discretion is action *outside* the spectrum of reasonable alternatives presented to the judge, see *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 496 (1920), or it may have the character of "whimsy, caprice, or arbitrary or idiosyncratic notions," *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999), quoting from *Bucchiere* v. *New England Tel. & Tel. Co.*, 396 Mass. 639, 642 (1986). See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 433 (1979).

Here the judge's concerns about lateness were thoroughly reasonable. The motion to amend arrived twenty-one months after CAU's answer, seventeen months after the tracking order deadline for amendment, more than six months after the discovery deadline, and three weeks after the submission of cross motions for summary judgment ostensibly dispositive of the case. The counterclaims would open up broad new issues and corresponding avenues of discovery about motive and deception, or in effect a new action.[19] While the more common ground for denial for lateness presents the eve-of-trial motion, the judge may assess the timeliness of the motion against the background of the entire case, including its history, logistics, and probable merits. See, e.g., *Leonard* v. *Brimfield*, 423 Mass. at 157 (denial of amendment affirmed even though the trial did not follow until seventeen months later); *Wiedmann* v. *The Bradford Group, Inc.*, 444 Mass. 698, 712-713 (2005) (denial of amendment affirmed at a time one year after the tracking order deadline for amendment, after the close of discovery, and during the pendency of a motion for summary judgment).

---

[19]The case had moved past its originally targeted date for trial (February, 2011, according to the tracking order) by more than three months as of the time of oral argument of the summary judgment cross motions on June 8, 2011.

Finally, the prejudice of the denial to CAU, if any, was curable. The gist of the proposed counterclaims charged Audubon with unmeritorious, bad faith prosecution of its claim. One of the proposed counts invoked G. L. c. 231, § 6F. While the judge prohibited that allegation as a pleaded claim, the statute permits a party to pursue a postjudgment motion for an award of reasonable fees and costs generated by an opponent's tainted claims.[20] That postjudgment alternative remained available to CAU at the time when the judge would have been most familiar with the detailed merits or demerits of the suspect claims.

*Conclusion.* The judge correctly concluded (1) that the reference determination did not extend to the issue of coverage and liability, and (2) that Audubon's claim fell outside the coverage of the CAU policy. She soundly denied (3) Audubon's motion for reconsideration and (4) CAU's motion to amend.

*Judgment affirmed.*

*Order denying motion for reconsideration affirmed.*

---

[20]In pertinent part, G. L. c. 231, § 6F, inserted by St. 1976, c. 233, § 1, provides, "Upon *motion* of any party in any civil action in which [an] . . . order or *judgment* has been made by a judge," the court may find after a hearing that all or substantially all of the claims made by a represented party were "wholly insubstantial, frivolous and not advanced in good faith" (emphasis supplied). Upon so finding, the court shall then award to the party targeted by the claims its reasonable counsel fees and related costs and expenses incurred in defense against the claims.