NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-321

SETH WATSON

vs.

CAROL MICI[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Seth Watson, filed a complaint in Superior Court seeking a declaration that the North Central Correctional Institution (NCCI) library services policy relating to the photocopying of legal documents by inmates and part of the corresponding Department of Correction (DOC) regulation are unconstitutional and an injunction against enforcement of the NCCI policy. See 103 Code Mass. Regs. § 478 (2017). Watson also sought compensatory and punitive damages against the defendants for alleged violations of his constitutional rights

_____

[1] Individually and as Commissioner of Correction.

[2] Department of Correction; Matthew Divris, individually and in his capacity as superintendent of North Central Correctional Institution, Gardner; and Carolyn Murray, individually and in her capacity as librarian at North Central Correctional Institution, Gardner.

under G. L. c. 12, §§ 11H and 11I.  The court sua sponte dismissed the complaint against DOC for failure to complete service.  See Superior Court Standing Order 1-88 (2020).  A judge of the Superior Court subsequently allowed the remaining defendants' motion to dismiss the complaint and Watson appealed. We affirm.

Background.  We recite the pertinent facts alleged in Watson's complaint.  Watson is incarcerated at NCCI.  He has a disability that interferes with his daily functions and causes him severe pain when he types or sits for long periods of time. In 2021, Watson's two minor children stopped visiting him at NCCI.  In May 2021, in response to his request, the Probate and Family Court sent Watson a form to petition for visitation. Watson was instructed to send copies of the petition to his children's mother and her attorney.  Citing the applicable regulations, NCCI librarian Carolyn Murray denied Watson's request to make two photocopies of the petition.  She told him that, notwithstanding his disability, he could type copies using a typewriter.  Due to his limited access to the library during the COVID-19 pandemic and the pain associated with his disability, Watson spent about a month typing the two copies, thus delaying his petition for visitation.  When Watson later requested to photocopy his response to the opposition to his petition, Murray again denied his request for two photocopies.

2

Four days later, Watson finished typing the copies and mailed them.

Discussion. 1. Request for declaratory and injunctive relief. "We review the denial of a motion to dismiss de novo." Drake v. Leicester, 484 Mass. 198, 199 (2020). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries . . . ." Lewis v. Casey, 518 U.S. 343, 346 (1996), quoting Bounds v. Smith, 430 U.S. 817, 828 (1977). Because Watson alleged that the defendants interfered with his constitutional right of access to the courts, he had a private right of action under 42 U.S.C. § 1983.

Watson alleges that the defendants denied his access to the courts by refusing to provide photocopies of his legal documents. At the time, NCCI's procedure stated that photocopying services were available to inmates "for the purpose of reproducing original legal documents . . . in support of [c]riminal litigation challenging the inmate's sentence . . . or in support of civil litigation challenging the conditions of [his] confinement." Cf. 103 Code Mass. Regs. § 478.05 (2017). In July 2022, the photocopying procedure expanded to include "[o]ther original legal documents upon showing of legal need." Because Watson seeks declaratory and injunctive relief with

3

respect to a policy that is no longer in effect, his request for equitable relief is moot.  See Lynn v. Murrell, 489 Mass. 579, 582 (2022) ("A party no longer has a personal stake in a case where a court can order no further effective relief" [quotations and citation omitted]).  Watson also asserts that the issue is ripe for review because, even though the revised policy broadens the category of legal documents for which photocopying services are available, the corresponding DOC regulation was not similarly amended.  However, Watson does not contend that he will imminently suffer an injury under the revised policy, thus his claim is not yet ripe for review.  See Department of Community Affairs v. Massachusetts State College Bldg. Auth., 378 Mass. 418, 422 (1979) (power to render declaratory and other relief limited to cases where actual controversy has arisen).

Even if we reached Watson's challenge to NCCI's prior policy, his argument would fail for multiple reasons.  In particular, Watson ultimately was able to use NCCI library services to file his legal documents, albeit after some delay. Slower access to the courts is not the same as denial of access to the courts and does not constitute a substantial injury.  See Casey, 518 U.S. at 351-352  (injury suffered by inmate must be substantial, such as dismissal of action or inability to file complaint).  Watson's challenge to the DOC regulation fails for the same reason.

4

2.  Request for damages.  Watson also sought damages against the defendants under G. L. c. 12, §§ 11H and 11I.  The defendants assert that they have qualified immunity.  To determine whether a defendant is entitled to a defense of qualified immunity, we consider

> "(1) whether the facts taken in the light most favorable to the plaintiff demonstrate that there was a violation of the plaintiff's Federal constitutional or statutory rights; (2) if so, whether at the time of the violation those rights were clearly established; and (3) whether a reasonable person in the defendant's position would understand that his conduct violated those clearly established rights" (footnote omitted).

Cristo v. Evangelidis, 90 Mass. App. Ct. 585, 590 (2016).  As discussed above, the defendants did not violate Watson's constitutional right to access the courts because he was able to file his legal documents.  Even if Watson had alleged facts suggesting that the defendants' conduct infringed on his right to access the courts, however, any right to photocopies of the documents was not clearly established at the time the defendants relied on existing policy and regulations.  See Longval v. Commissioner of Correction, 448 Mass. 412, 418-419 (2007) (qualified immunity is so broad that "all but the plainly incompetent or those who knowingly violate the law" are immune

5

to civil suits [citation omitted]).  Thus, Watson's claim for damages was properly dismissed for that reason as well.[3]

3.  <u>Department of Correction's dismissal from the complaint</u>.  The decision whether to allow a motion for reconsideration rests within the sound discretion of the motion judge.  See <u>Audubon Hill S. Condominium Ass'n</u> v. <u>Community Ass'n Underwriters of Am., Inc</u>., 82 Mass. App. Ct. 461, 470 (2012).  The movant "should specify (1) changed circumstances such as (a) newly discovered evidence or information, or (b) a development of relevant law; or (2) a particular and demonstrable error in the original ruling or decision" (quotation omitted).  <u>Id</u>.

On February 11, 2022, Watson moved to extend the February 25 deadline to perfect service of process on DOC to April 15, 2022.  On March 22, 2022, Watson mailed the complaint to DOC.  At that time, no action had been taken on his motion to extend the deadline.  On May 27, 2022, the judge dismissed DOC from the complaint.  On June 21, 2022, the judge allowed Watson's motion to extend the deadline to April 15, 2022.  On July 27, 2022, the judge denied the plaintiff's motion for reconsideration of the

---

[3] Similarly, even if we reached Watson's claims under G. L. c. 12, §§ 11H and 11I, his complaint alleged no facts plausibly suggesting that the defendants engaged in "threats, intimidation, or coercion" and thus would be dismissed on that ground.  See <u>Iannacchino</u> v. <u>Ford Motor Co</u>., 451 Mass. 623, 636 (2008).

6

dismissal.  To support his motion, Watson offered proof that he served DOC on March 22, 2022, after the February 25 deadline but before the April 15 deadline that he had requested.  We discern no error in the judge's denial of the motion for reconsideration where the deadline for service had passed at the time the court dismissed DOC from the complaint.  Moreover, even if the complaint against DOC had been reinstated, it would have been properly dismissed for at least the same reasons that apply to the claims against the other defendants.

<u>Judgment affirmed</u>.

By the Court (Green, C.J., Englander & Brennan, JJ.[4]),

Assistant Clerk

Entered:  May 17, 2024.

---

[4] The panelists are listed in order of seniority.

7