Curran, Dennis J., J.
The plaintiff Granite State Insurance Company and the defendant Truck Courier, Inc. have filed cross motions for summary judgment. At issue are three worker compensation insurance policies provided by Granite State to Truck Courier. The parties’ dispute centers on whether Truck Courier’s drivers should have been included in the calculation of the policies’ premiums.
*577 Granite State has sued Truck Courier for unpaid premiums and Truck Courier has counterclaimed for breach of the terms of the policies and for violation of G.L.c. 93A.
BACKGROUND
Truck Courier is in the business of same-day pickup and delivery services. As part of its business model during the relevant time period, Truck Courier used various individuals who owned their own vans and trucks to provide these services to its customers. Truck Courier considered all of these drivers to be independent contractors and not employees. Truck Courier ran its business in a transparent effort to ensure that the drivers were legally considered independent contractors.
Each driver executed an “Agreement for Leased Equipment and Independent Contractor Services” with Truck Courier. The Agreement included a workers’ compensation waiver, which preserved the drivers’ rights under the common law. The waiver provided:
NOTICE OF WAIVER OF WORKERS’ COMPENSATION COVERAGE UNDER MASSACHUSETTS LAW
In the event [the driver] is an individual and should personally operate a vehicle in service to [Truck Courier], then this provision constitutes [the driver’s] written notice to carrier, pursuant to Mass. Gen. Laws Chapter 152, s.24, that [the driver] reserves his right of action at common law with regard to any injuries he might suffer that otherwise may be compensable under the Massachusetts Workers’ Compensation Act, in lieu of any compensation that might otherwise be available to employees under Mass. Gen. Laws Chapter 152. Therefore [the driver] agrees, understands and is notified that the workers’ compensation laws of the Commonwealth of Massachusetts will not cover him personally for any accident or injuries arising out of and in the course of his service driving a Leased Vehicle on behalf of [Truck Courier] and he further understands, agrees and is notified that he is waiving any rights covered by said Massachusetts Workers’ Compensation Act and elects not to be covered by said statute. [The driver] agrees, understands and is notified that the common law of negligence will apply to any claim(s) [the driver] may have against [Truck Courier] for injuries suffered by [the driver] while driving a Leased Vehicle.
Exhibit C-l, at §3.01(c).
As part of their relationship with Truck Courier, the drivers were required to become members of NICA, Inc., a company that provides various benefits to independent contractors. The “Independent Contractor Application and Agreement” the drivers executed with NICA also contained a workers’ compensation waiver, which stated, in relevant part, that “the [independent contractor] hereby waives any rights he/she may have under [workers’ [c]ompensation [l]aw and reserves his/her right of action at common law.” Exhibit C-2, at §6.
Truck Courier obtained workers’ compensation insurance from Granite State starting around 2000. For all policies issued before 2005, Granite State did not consider the drivers to be covered by the policies and did not include the drivers in the calculation of the policies’ premiums. These policies are not at issue.
Truck Courier obtained the first policy at issue on January 22, 2005, for the period 2005-2006, when it renewed its workers’ compensation insurance with Granite State. Truck Courier subsequently obtained the two other polices at issue for the periods 2006-2007 and 2007-2008.[1] The 2006-2007 policy was issued on January 22, 2006 and the 2007-2008 policy was issued on January 22, 2007.
The three policies in question are essentially identical. They provided for both workers’ compensation insurance (Part 1) and employers’ liability insurance (Part 2). Consistent with previous policies, the policies at issue specifically authorized Granite State to bill an “estimated premium” at the start of the policy period. The “final premium” would be determined after the policy period ended and Granite State had conducted an on-site audit of Truck Courier. Granite State had three years from the end of the policy period to conduct the audit.
Granite State’s “manuals of rules, rates, rating plans and classifications” would determine the premium. Exhibits A-l, A-2, A-3, at §5(A). The manuals were subject to change. The premium would be calculated in the following manner:
Premium for each work classification is determined by multiplying a rate times a premium basis . . . This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1. All your officers and employees engaged in work covered by this policy; and
2. All other persons engaged in work that could make us liable under Part One (Workers’ Compensation Insurance) of this policy . . . This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers’ compensation obligations.
Id. at §5(6). The final premium would be determined after the policy period ended “by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy.” Id. at §5(E). If the final premium were more than the estimated premium, Truck Courier would be responsible for paying Granite State the difference.
*578 Granite State performed audits for the three policies at issue to determine the final premiums. For the first time, Granite State considered the drivers’ payroll and other remuneration in calculating the premiums, which resulted in final premiums that were significantly higher than the estimated premiums. This new analysis was based on the 2004 amendment to the Massachusetts Wage Act. Granite State reviewed the Massachusetts Workers’ Compensation Rating and Inspection Bureau’s Guidelines and the new version of G.L.c. 149, §148B in formulating its analysis. It determined that based on the current state of the law, the drivers were properly classified as employees, and therefore, were subject to the policies.
All of the audits were finalized after the relevant policies were issued. The audit for the 2005-2006 policy was issued on February 28, 2007, the audit for the 2006-2007 policy was issued on June 28, 2007, and the audit for the 2007-2008 policy was issued on December 15, 2007. Granite State determined that Truck Courier owed it $157,649.00 in additional premiums.
To date, Truck Courier has failed to make the final premium payments to Granite State.
DISCUSSION
I. STANDARD
Summary judgment shall be granted forthwith where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Barrows v. Wareham Fire Dist., 82 Mass.App.Ct. 623, 625 (2012), citing Cassesso v. Commissioner of Corr., 390 Mass. 419,423 (1983). In assessing the record on a motion for summary judgment, all reasonable inferences are drawn in favor of the nonmoving party. Terra Nova v. Fray-Witzer, 449 Mass. 406, 411 (2007).
II. BREACH OF CONTRACT
A. Drivers Employees or Independent Contractors?
Granite State’s rationale for including the drivers’ payroll and remuneration in its calculation of the premiums is that the drivers were legally considered to be employees of Truck Courier. While Truck Courier considered the drivers to be independent contractors, Granite State maintains that the employee-independent contractor test articulated at G.L.c. 149, §148B establishes that the drivers were actually employees. See Massachusetts Delivery Ass’n v. Coakley, 671 F.3d 33, 36 (1st Cir. 2012) (“Section 148B governs whether an individual is deemed an employee for purposes of various wage and employment laws, chapters 62B, 149, 151 and 152 of the Massachusetts General Laws”). Granite State argues that because the drivers were employees, they were covered by the policies and should have been used in calculating the premiums.
The current version of G.L.c. 149, §148B creates a presumption that individuals providing services for an employer are employees. The statute provides that:
For the purpose of this chapter [chapter 149] and chapter 151, an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:—
(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
(2) the service is performed outside the usual course of the business of the employer; and
(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.[2]
G.L.c. 149, §148B(a). The burden is on the employer to prove all three elements in order to show that the worker is an independent contractor and not an employee. Somers v. Converged Access, Inc., 454 Mass. 582, 589 (2009).
Here, the drivers were employees of Truck Courier because the scope of the services that the drivers provided was within the usual course of Truck Courier’s business.[3] See G.L.c. 149, 148B(a)(2). Truck Courier specializes in same day pick up and delivery services, which is entirely dependent on having vehicles and drivers. Truck Courier cannot seriously dispute that the drivers’ services were necessary to its business model and were a regular and continuing part of its business. See Rainbow Dev., LLC v. Department of Indus. Accidents, 2005 Mass.Super. LEXIS 586 at *10 (Mass.Super. Nov. 17, 2005) (Cratsley, J.) [20 Mass. L. Rptr. 277] (finding that individuals who performed detailing and conditioning services for a company that was in the business of “detailing and conditioning” new and used car were “engaged in the exact business [the employer] is engaged in; [if the employer] merely provides the administration . . . [wfithout the services of the workers, [the employer] would cease to operate”); Schwann v. FedEx Ground Package Sys., 2013 U.S. Dist. LEXIS 93509 at *18 (D.Mass. July 3, 2013) (finding that pick-up and delivery drivers performed services in the usual course of FedEx’s business, noting that FedEx holds itself out to the public as providing package pick-up and delivery services and without the drivers, FedEx would cease to operate). The undisputed facts are clear that without the drivers, Truck Courier would not have a business. Because Truck Courier cannot prove all three elements, the drivers must be considered employees as a matter of law.
*579 B.Relevance of Workers’ Compensation Waivers
Truck Courier argues that the drivers validly opted out of the workers’ compensation system by executing the written Workers’ Compensation waivers in their Agreements with Truck Courier and NICA. It contends that because G.L.c. 152, §24 permits employees to opt out of workers’ compensation, the drivers should not have been included in the calculation of the premiums.
General Laws c. 152, §24 permits an employee to opt out of the workers’ compensation system and preserve his or her right of action at common law. See HDH Corp. v. Atlantic Charter Ins. Co., 425 Mass. 433, 439 (1997). Thus, in instances where an employee decides to forego the workers’ compensation system, the employee may bring a tort action against his or her employer for work-related injuries. See id. at 439 n. 11.
Here, the policies allow Granite State to include in its calculation of the premiums the payroll and other remuneration of all Truck Courier’s “officers and employees engaged in work covered by this policy.” Exhibits A-l, A-2, A-3, §5(C). Part Two of the policies is a general employers’ liability insurance policy. Because the Workers’ Compensation waivers signed by the drivers preserved the drivers’ common-law rights, Granite State could have been liable under Part Two of the policies for the drivers’ work-related injuries. See HDH Corp., 425 Mass, at 439 n. 11 (“Part Two, the employers’ liability portion of the insurance policy, is intended to provide coverage in the rare circumstance in which an employee who has affirmatively opted out brings a tort action for personal injuries”). Therefore, the plain language of the policies indicates that all Truck Courier employees should have been included in the calculation of the premiums.[4]
C.Estoppel
Truck Courier argues that Granite State is estopped from including the drivers in its calculation of the final premiums because, before 2005, Granite State did not consider the drivers to be covered by the policies. It contends that because G.L.c. 149, §148B was amended in 2004, before the issuance of the policies in question, Granite State should have forewarned it that the drivers would be included in the calculation of the final premiums.
Estoppel is appropriate in instances where “(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.” Bongaards v. Millen, 440 Mass. 10, 15 (2003).
Truck Courier may well be disappointed that the final premiums are substantially higher than the estimated premiums. The policies were clear, however, that the estimated premiums were not the final premiums. The policies stated that the manuals Granite State used to estimate the premiums were subject to change and the changes would be applied to the policies. The changes Granite State made in its calculation of the final premiums were in response to a change in the law, which it was obviously required to follow.
Further, other than mere conjecture, there is nothing to indicate that Granite State was affirmatively aware that the change in the law would so drastically increase the final premiums. See Glidden v. Maglio, 430 Mass. 694, 696-98 (2000).
Truck Courier’s assertion that “the right thing to do” would have been for Granite State to inform Truck Courier that its final premiums could be substantially affected by the change in the law may have merit. However, given the fact that the estimated premiums were clearly subject to change, it cannot be said that Granite State intended to induce Truck Courier to rely on the estimated premiums and prior audits.
D.Summary
Because the drivers were employees of Truck Courier, they were covered by the policies in question. Therefore, Granite State did not breach the policies by including the payroll and remuneration of the drivers in calculating the policies’ premiums. Moreover, Truck Courier’s failure to pay the final premiums constitutes a breach of the policies.[5]
III. VIOLATION OF G.L.c. 93A
Granite State argues that it did not violate G.L.c. 93A because at the time it issued the policies in question, it had not yet finalized an audit of Truck Courier using the employee-independent contractor test outlined at G.L.c. 149, §148B, and therefore, did not know how the change in the law would affect the policies’ premiums.
For the purposes of G.L.c. 93A, §11, “[a] practice is unfair if it is ‘within . . . the penumbra of some common-law, statutoiy, or other established concept of unfairness; ... is immoral, unethical, oppressive, or unscrupulous; [and] . . . causes substantial injuiy to [other businessmen].’ ” Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 27 (1997), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). The “focus [is] on the nature of challenged conduct and on the purpose and effect of that conduct.” Massachusetts Employers Ins. Exch v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995). “[C]onduct undertaken as leverage to destroy the rights of another party to” a contract constitutes an unfair act. Id. Further, negligent misrepresentation may also “constitute an unfair or deceptive act... if the truth could have been reasonably ascertained.” Quinlan v. Clasby, 71 Mass.App.Ct. 97, 102 (2008), citing Glickman v. Brown, 21 Mass.App.Ct. 229, 235 (1985).
After reviewing the parties’ submissions, this Court concludes that whether Granite State violated G.L.c. 93A is a disputed question of fact not appropriately *580 resolved on a motion for summary judgment. See Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (“whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact”). Granite State was aware of the change to G.L.c. 149, §148B when it issued the policies in question. Further, Granite State had access to prior audits of Truck Courier that outlined Truck Courier’s business model and its use of independent contractors. Despite this knowledge, Granite State provided Truck Courier with three grossly underestimated premiums, the last one issued over two years after G.L.c. 149, §148B was amended. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 62 (2004) (negligent misrepresentation that is “extreme or egregious” constitutes a violation of G.L.c. 93A); see also Zayre Corp. v. Computer Sys. of Am., Inc., 24 Mass.App.Ct. 559, 570 (1987) (finding that it was for the trier of fact to determine whether intentional misrepresentation with respect to parly’s intent to terminate a lease violated G.L.c. 93A, §11). Given these facts, it is open to dispute whether Granite State could have reasonably ascertained that the estimated premiums were substantially inaccurate. See Quinlan, 71 Mass.App.Ct. at 102-03.
CONCLUSION
Because the drivers were employees of Truck Courier for the purposes of workers’ compensation, they were appropriately included in the calculation of the final premiums. As such, Truck Courier breached the policies by failing to pay the premiums. However, a trier of fact must resolve whether Granite State’s conduct constitutes a violation of G.L.c. 93A.
ORDER
For these reasons, Granite State’s motion for summary judgment is ALLOWED with respect to Count I of its complaint and Count II of Truck Courier’s counterclaim, but DENIED with respect to Count IV of Truck Courier’s counterclaim. Truck Courier’s motion for summary judgment is DENIED.

The 2007-2008 policy was canceled effective August 16, 2007. Truck Courier then sought replacement coverage.

Truck Courier does not dispute that the test outlined at G.L.c. 149, §148B is determinative of whether the drivers were its employees for the purposes of workers’ compensation. See, e.g., College News Serv. v. Department of Indus. Accidents, 2006 Mass.Super. LEXIS 470 at *10-*12 (Mass.Super., Sept. 14, 2006) (Sikora, J.) [21 Mass. L. Rptr. 464] (using G.L.c. 149, §148B to determine if individuals were employees for purposes of Workers’ Compensation insurance).

“An Advisory Opinion from the Attorney General’s Fair Labor Division on G.L.c. 149, §148B 2008/1" notes that the relevant inquiry is whether the service provided is ’’necessary to the business" or “merely incidental to it,” and whether the worker “is performing an essential part of the employer’s business.” See Smith v. Winter Place, LLC, 447 Mass. 363, 367-68 (2006) (“Insofar as the Attorney General’s office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions”).

Truck Courier argues that because the drivers obtained occupational accident insurance through NICA, they were not covered by the employers’ liability section of the policies. However, Granite State could include “payroll and all other remuneration paid . . . [to] [a]ll your officers and employees engaged in work covered by this policy’’ in the calculation of the premiums. Exhibits A-l, A-2, A-3, at §5(C) (emphasis added). Here, the drivers were engaged in work covered by the policies. The plain language of the policies did not require Granite State to be affirmatively liable under the policies. Further, the occupational accident insurance did not waive the drivers’ common-law right to bring a tort action against Truck Courier, which would have been covered by the policies.

In its counterclaim for breach of contract, Truck Courier alleges that Granite State breached the policies “by failing to refund to Truck Courier on a pro rate basis amounts of the premium for the policy year following cancellation of the policy, demanding payments of premiums in excess of those to which it is entitled under the policies], failing to accord Truck Courier its rights to administrative relief prior to commencement of suit, and binding policies of insurance without advising Truck Courier in advance of the material change in the position of Granite State as to the rates, classifications, and remuneration upon which premiums would be assessed.” Answer and Counterclaims, ¶37. With respect to the first two allegations, there is no evidence that Granite State improperly calculated the premiums. Further, with respect to the last two allegations, there is no language in the policies that encompasses these allegations. Therefore, summary judgment must enter for Granite State on this counterclaim.