Curran, Dennis J., J.
The plaintiffs[1] Yogendra Sagar and certified class ask the Court to reconsider a decision it issued on January 18, 2014 denying their motion for summary judgment and allowing, in part, and denying, in part, the defendants George Fiorenza’s and Ambassador’s[2] cross motion for summary judgment.
After a hearing and a review of both parties’ well-written briefs,[3] the Court must DENY Mr. Sagar’s motion.
BACKGROUND
For purposes of this decision, the Court will adopt the facts as recited in its previous memorandum of decision and order on the parties’ cross motions for summary judgment. Sagar v. Fiorenza, No. 12-4081 (Curran, J.) (Mass. Super. January 18, 2014) [31 Mass. L. Rptr. 589].
In its previous decision, the Court was tasked with determining whether Mr. Sagar was misclassified as an independent contractor under G.L.c. 149, §148B. General Laws c. 149, §148B provides that “an individual providing any service . . . shall be considered an employee” if they satisfy certain criteria named within the statute. The Court first found that Ambassador’s business involved two distinct services — a dispatch service and a taxi service. While Mr. Sagar was not involved in Ambassador’s dispatch service, he did provide taxi services to Ambassador’s corporate customers. Therefore, the Court held that, as a threshold matter, G.L.c. 149, §148B applied.
Next, the Court analyzed the three-part test noted within the statute to determine whether Mr. Sagar was an independent contractor or an employee of Ambassador. To prove that Mr. Sagar was an independent contractor, Ambassador had to show that “(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of the business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.” G.L.c. 149, §148B. The Court found that Ambassador satisfied prongs one and three; however, it held that a dispute of material fact remained with respect to prong two. Specifically, it held that there was still a factual issue over whether Ambassador provides taxi services to corporate customers in the usual course of its business. If so, then Mr. Sagar would be considered an employee under the statute because Mr. Sagar’s driving services are indispensable to the taxi services Ambassador offers to its corporate customers. The Court’s analysis of prong two is the subject of the current motion.
DISCUSSION
It is within the discretion of the motion judge to reconsider previously-issued orders provided the moving party requests reconsideration within a reasonable time. Commonwealth v. Gonsalves, 437 Mass. 1022, 1022 (2002). Generally, when the Court has already issued a written memorandum that sets forth its reasoning for the decision, the moving party should “specify (1) ‘changed circumstances’ such as (a) newly discovered evidence or information, or (b) a development of relevant law; or (2) a particular and demonstrable error in the original ruling or decision.” Audubon Hill S. Condominium Ass’n v. Community Ass’n Underwriters of America, Inc., 82 Mass.App.Ct. 461, 470-71 (2012).
I. The Sebago Decision
Mr. Sagar contends that the Court should amend its order in light of the recent Appeals Court decision in Sebago v. Tutunjian, 2014 WL 1874858, 85 Mass.App.Ct. 1119 (Rule 1:28 decision) (2014). In Sebago, the Appeals Court affirmed the Superior Court’s issuance of a preliminary injunction and agreed with the Court’s finding that the plaintiffs, who are Boston cab drivers, had a substantial likelihood of proving that they are employees of the named defendants under G.L.c. 149, §148B. Id. at *1. The defendants are different taxi-related entities, including a dispatch company and a company that owned and controlled hundreds of taxi medallions. Id. There, the Superior Court Judge found that that the plaintiffs’ work contributed directly to the defendants’ revenue in the form of shift fees the plaintiffs were required to pay the defendants in order to drive their cabs. Sebago v. Tutunjian, 2013 WL 7855495, at *1 (Mass.Super. Dec. 24, 2013) [31 Mass. L. Rptr. 647, subnom Sebago v. USA Taxi Ass’n, Inc. (Giles, Linda E., J.)]. These shift fees were derived entirely from tips and fares drivers received from their customers. Id. Further, it found that without the plaintiffs work, Le., driving the cabs, *192 the defendants’ medallions and cabs would be worthless. Id. Thus, the Court held that the plaintiffs performed a service for the defendants. Id. The Superior Court Judge also denied the parties’ cross motions for summary judgment, finding a genuine dispute of material fact over whether taxi services were within the defendants’ usual course of business. Id. at *2.
Mr. Sagar contends that because Ambassador’s operation is similar in every material respect to the defendants’ operation in Sebago, the Court should revise its ruling to mirror the outcome reached by the Superior Court Judge in that case. The Court respectfully disagrees. In Sebago, the session judge focused on the revenue the defendants derived from the shift fees the medallion management company received from drivers who were operating its cabs. Id. Ambassador, however, is not a medallion management company; it is a dispatch service.[4] There is no evidence in the record to suggest that Mr. Sagar, who uses Ambassador’s dispatch service to find customers, pays Ambassador shift fees. Instead, Mr. Sagar pays shift fees to the medallion owners and leaseholders who own or lease out the cabs he drives during his shifts. Thus, unlike in Sebago, Mr. Sagar’s work (notwithstanding the corporate customers he may pick up) does not contribute directly to Ambassador’s revenue. The Judge there also mentioned the fact that the defendants’ medallions and cabs would be worthless without the driver’s work. Id. There, without the drivers to operate the cabs it owns and leases out, the business would cease to exist. See Rainbow Dev. Corp. v. Comm. of Mass. Dep’t. of Indus. Accidents, 2005 WL 3543770, at *3 (Mass.Super. Nov. 17, 2005) [20 Mass. L. Rptr. 277] (noting that “[without the services of the workers, Auto Shine would cease to operate”). Here, however, as previously explained in the Court’s original decision, Ambassador would still be able to offer its dispatch services without Mr. Sagar’s work. See Sagar, No. 12-4081, at *12 n.11. While Ambassador’s business would be adversely affected without individuals like Mr. Sagar there to pick up people who call for a cab, it would not “cease to operate.” See Rainbow Dev. Corp., 2005 WL 3543770, at *3.
Therefore, the reasoning the Judge in the Sebago case employed to reach her conclusion in Sebago was obviously well-grounded, but inapplicable to the facts presented by this particular case.
II. The Alleged Error
Mr. Sagar also contends that the Court failed to follow relevant case law when it determined what services constitute an employer’s usual course of business. He alleges the factual record shows that Ambassador provides taxi services not just to its corporate customers, but to the general public as well. Therefore, Mr. Sagar claims that the remaining issue is not whether taxi services provided to corporate customers is in the usual course of Ambassador’s business as the , Court concluded, but whether.taxi services in general are in the usual course of its business.
Mr. Sagar claims that the Court failed to recognize the way in which a company advertises and holds itself out to the public as a relevant consideration in determining a company’s usual .course of business. See, e.g., Schwann v. FedEX Ground Package Sys., 2013 WL 3353776 (D.Mass. July 3, 2013); Granite State Ins. Co. v. Truck Courier, Inc., 2014 WL 316670 (Mass.Super. Jan. 17, 2014) [31 Mass. L. Rptr. 576); Jenks v. D&B Corp. d/b/a The Golden Banana, 2011 WL 3930190 (Mass.Super. Aug. 24, 2011) [28 Mass. L. Rptr. 579]. In its previous decision, however, the Court acknowledged the fact that Ambassador holds itself out as a “cab service” on its website and factored this into its prong two analysis. See Sagar, No. 12-4081, at *13. Although it found that this factor was relevant, the Court determined that this factor alone is insufficient to establish as a matter of law that Ambassador’s usual business is providing taxi services. Id. at 14. The case law supports this view. In the cases to which Mr. Sagar refers, there is other evidence apart from merely how the company holds itself out to the public to support its conclusion that the service provided in those cases was in the usual course of the companies’ business. See, e.g. Schwann, 2013 WL 3353776, at * 13 (noting other relevant factor as: driver’s services were essential to company’s operation and existence); Jenks, 2011 WL 3930190, at *5-6 (noting other factors as: owner of company described it as “alcohol establishment entertainment facility” where workers provide the entertainment and workers perform and interact with customers in an effort to further the company’s alcohol sales).
Additionally, Mr. Sagar claims that the customers of Ambassador’s dispatch services are not the medallion owners and leaseholders who subscribe to the service as the Court found, but are the people who call Ambassador to request a pick up. He suggests that the medallion owners and leaseholders contract with Ambassador merely to manage the cabs they own and that the core service Ambassador provides is to the person who calls in to request a pick up from one of these cabs. Mr. Sagar misconstrues the nature of Ambassador’s business to come to this conclusion. Ambassador derives its revenue from the medallion owners and leaseholders who pay dispatch fees to subscribe to their service — not from the people who call in to request a pick up. See Kubinec v. Top Cab Dispatch, Inc., No. 12-3082BLS, at *20 (Kaplan, J.) (Mass.Super. June 24, 2014) (noting the fact that dispatch company generates no revenue from passenger rides as evidence that taxi service not in company’s usual course of business). Apart from a possible credit card processing fee, Ambassador does not receive any portion of the tips and fares customers pay for their cab ride. This money goes to the driver who then remits a portion to the medallion owner or leaseholder in the form of the driver’s shift fees. Thus, the Court was *193 correct in concluding that the customers of Ambassador’s dispatch services are the medallion owners and leaseholders who subscribe to the service.
Mr. Sagar also argues that a worker may still be considered an employee under section 148B in a situation such as this one where the customer does not pay the employer directly for the services the worker provided. See, e.g., Jenks, 2011 WL 3930190; Chaves v. King Arthur’s Lounge, No. 07-2505 (McIntyre, J.) (Mass.Super. July 30, 2009). He is correct. However, in the cases he offers for support, the companies received a portion of the money that the customers paid to the worker for the service provided in the form of fees the companies required the workers to pay to work. See id.; see also Sebago, 2013 WL 7855495, at *1. As noted here, Mr. Sagar does not pay Ambassador a fee to pick up customers using its dispatch service. Moreover, there were many other factors present in those cases to demonstrate that the services those workers provided were, in fact, in the usual course of the companies’ business. That is not the case here.
As the Court has already found, apart from Ambassador advertising itself to the public as a “cab service,” there is no other evidence in the record to show that the taxi services Mr. Sagar provides to the general public are in the usual course of Ambassador’s business. Therefore, Mr. Sagar’s motion must be DENIED.[5]
ORDER
For these reasons, Mr. Sagar’s motion for reconsideration must be DENIED.

The court will refer to the plaintiffs collectively as “Mr. Sagar.”

Carribridge Radio Dispatch, Inc., doing business as Ambassador Brattle Cab, will be referred to as “Ambassador.”

Nhe Court appreciates the oral advocacy exhibited by both parties’ counsel at the hearing as well as the thoroughly researched written submissions each presented in support of their respective positions.

While Mr. Fiorenza may own medallions individually or through a separate company, this company is not a named defendant. Although Mr. Fiorenza is a named defendant, Mr. Sagar is suing him in his capacity as a corporate officer of Ambassador not in his capacity as an individual medallion owner.

As owner and corporate officer of Ambassador, Mr. Fiorenza may be held individually liable to the extent that Ambassador is found to be liable for violations of the Wage Act. See G.L.c. 149, §148B(d) (“Any entity and the president and treasurer of a corporation and any officer or agent having the management of the corporation or entity shall be liable for violations of this section”); see also G.L.c. 149, §148 (“The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section”). However, the Court will not determine whether Mr. Fiorenza is personally liable as an individual medallion owner or liable as an owner of a medallion management company not named as a defendant in this action because this theory of liabilily was not discussed in the underlying cross-motions for summary judgment. Audubon Hill S. Condominium Ass'n, 82 Mass.App.Ct. at 471 (noting that a different theory of the case not addressed in the motion for summary judgment cannot be offered after the fact in a motion for reconsideration).